**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Horace Greely THOMPSON,
Defendant-Appellant.**

Nos. 85–2422, 85–2867.

United States Court of Appeals,
Tenth Circuit.

March 25, 1987.

C. Merle Gile, Oklahoma City, Okl., for defendant-appellant.

Robert Mydans, Asst. U.S. Atty. (William S. Price, U.S. Atty., and Stephen J. Korotash, Asst. U.S. Atty., on the brief), Oklahoma City, Okl., for plaintiff-appellee.

Before BARRETT, McKAY and MOORE, Circuit Judges.

McKAY, Circuit Judge.

On July 3, 1985, pursuant to a plea agreement, defendant, Horace G. Thompson, pled guilty to a one-count information of conspiracy to commit mail fraud. The court accepted the guilty plea but deferred sentencing. Two months later, before sentencing, the Government moved to set aside the plea agreement on the ground that defendant had violated the agreement. The district court granted the Government's motion and dismissed the information. Defendant appealed from the dismissal. A grand jury subsequently indicted him on eight counts of mail fraud and one count of conspiracy to defraud the United States. Defendant then moved to dismiss the indictment on double jeopardy grounds, alleging that the indictment charged him with the same offense to which he had already pled guilty. The district court denied the motion, and defendant appealed. Both appeals are now before this court.

The issues in the first appeal are (1) whether an order vacating the plea agreement and dismissing the information is immediately appealable as a final judgment, and (2) if so, whether the trial court properly vacated the plea agreement.

The issues in the second appeal are (1) whether defendant is entitled to an interlocutory appeal of the pretrial order denying his motion to dismiss the indictment, and (2) if defendant is entitled to an appeal, whether or not the indictment is barred on double jeopardy grounds.

The right to appeal is created by statute. For defendant to be able to appeal at this time, therefore, his appeals must fall within either the statutory provision or the common-law exception to the statute. Federal law permits appellate courts to review "all final decisions of the district courts...." 28 U.S.C. § 1291 (1982), and courts have strictly adhered to the policy of finality to avoid piecemeal review. *United States v. Hollywood Motor Car Co.*, 458 U.S. 263, 265, 102 S.Ct. 3081, 3082, 73 L.Ed.2d 754 (1982). "Adherence to this rule of finality has been particularly stringent in criminal prosecutions because 'the delays and disruptions attendant upon intermediate appeal,' which the rule is designed to avoid, 'are especially inimical to the effective and fair administration of the criminal law.'" *Abney v. United States*, 431 U.S. 651, 657, 97 S.Ct. 2034, 2039, 52 L.Ed.2d 651 (1977) (quoting *DiBella v. United States*, 369 U.S. 121, 126, 82 S.Ct. 654, 658, 7 L.Ed.2d 614 (1962)).

## I.

 Defendant argues that the district court orders to vacate the plea agreement and to dismiss the information are final orders and, therefore, immediately appealable. We first address the trial court's dismissal of the information. In a criminal case, a decision is not final until both conviction and imposition of sentence. *See Flanagan v. United States*, 465 U.S. 259, 263, 104 S.Ct. 1051, 1053, 79 L.Ed.2d 288 (1984); *Berman v. United States*, 302 U.S. 211, 212, 58 S.Ct. 164, 165, 82 L.Ed. 204 (1937); *United States v. Romero*, 642 F.2d 392, 397 (10th Cir.1981). Thus, the district court's order dismissing the information is not a final order, because it neither convicted nor sentenced defendant, and he has not been convicted since.[1] Moreover, the Supreme Court has specifically held a dismissal without prejudice to be an interlocutory

step in the prosecution. *Parr v. United States*, 351 U.S. 513, 518, 76 S.Ct. 912, 916, 100 L.Ed. 1377 (1956).

In *Parr*, petitioner was indicted in one division of the Federal District Court for the Southern District of Texas. The trial court granted his motion to transfer the case to another division. The Government subsequently obtained a new indictment in a different division and moved to dismiss the original indictment. Petitioner appealed from the trial court's grant of the motion to dismiss. The Supreme Court affirmed the appellate court's decision that it had no jurisdiction to hear an appeal from the dismissal of an indictment. Looking at the indictments first in isolation and then as part of the same prosecution, the Court found no basis for petitioner's claim of jurisdiction to appeal.

Because the information and indictment in this case are in two separate proceedings,[2] we rely on the Court's initial analysis in *Parr*. Like petitioner in *Parr*, Mr. Thompson was not injured by the dismissal of the information because the judgment was terminated in his favor, and only one who has been injured by a judgment may seek review on appeal. *Id.* at 516–17, 76 S.Ct. at 915. "So far as petitioner's standing to appeal is concerned, it makes no difference whether the dismissal still leaves him open to further prosecution.... The testing of the effect of the dismissal order must abide petitioner's trial, and only then, if convicted, will he have been aggrieved." *Id.* at 517, 76 S.Ct. at 915.

Defendant fares no better with his argument that vacation of the plea agreement was a final order. By vacating the plea agreement, the court neither convicted defendant nor sentenced him. Thus, the court's decision was not a final order for purposes of appeal. As with the dismissal order, we believe that "[t]he testing of the effect of the [vacation] order must abide

---

**1.** Defendant may argue that his guilty plea was a conviction, *see Boykin v. Alabama*, 395 U.S. 238, 242, 89 S.Ct. 1709, 1711, 23 L.Ed.2d 274 (1969), and therefore a final decision. The argument is flawed, however, because when the information was dismissed, the guilty plea was also dismissed. Record, vol. 3, at 12–14. Moreover, even were we to accept his guilty plea as a conviction, sentencing was never completed.

**2.** Although the Government requested that the court dismiss without prejudice, it had not previously attempted to obtain a superseding indictment against defendant. Three days after the information was dismissed, defendant was then indicted.

petitioner's trial...." *Id.* Thus, neither the vacation of a plea agreement nor the dismissal of an information are properly before this court as appeals from a final decision.

■ Moreover, defendant's claim merits no further consideration under the "collateral order" exception first articulated in *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949). A collateral order may be considered a final decision for purposes of section 1291 if it fits within the narrow group of claims "too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated." *Id.* at 546, 69 S.Ct. at 1226. Generally, the Supreme Court narrowly interprets this exception and, in criminal cases, has permitted interlocutory appeal of a pretrial order in only three instances in its name.[3] The Court has already foreclosed Mr. Thompson's argument with respect to the information dismissal. *Parr*, 351 U.S. at 519, 76 S.Ct. at 916. Therefore, we are left with the issue of whether voiding a plea agreement falls within the collateral order exception.

■ The Supreme Court has outlined three factors that must be satisfied in order to qualify an order for interlocutory appeal. To determine whether vacation of a plea agreement falls within that small group satisfying the exception, we must consider whether it (1) conclusively determines the disputed question, (2) resolves an issue completely collateral to the cause of action, and (3) would be effectively unreviewable on appeal from final judgment. *Abney*, 431 U.S. at 658, 97 S.Ct. at 2039.

■ The Supreme Court emphasized the importance of the third factor when it noted that each application of the exception to the finality doctrine involved "an asserted right the legal and practical value of which would be destroyed if it were not vindicated before trial." *Hollywood Motor Car*

*Co.*, 458 U.S. at 266, 102 S.Ct. at 3083 (quoting *United States v. MacDonald*, 435 U.S. 850, 860, 98 S.Ct. 1547, 1552, 56 L.Ed.2d 18 (1978)) (appeal from denial of motion to dismiss indictment for violation of right to a speedy trial is not entitled to interlocutory review because the protection is only from delay, not from the trial itself). Although defendant was subsequently indicted after the court's vacation of the plea agreement, that indictment is not before us in this first appeal. The appeal before us challenges only the order to vacate the plea agreement. Therefore, this appeal is from one who has not been injured by the trial court's action; rather, defendant was *released* from his guilty plea, with no guarantee that a new grand jury would again indict him if the Government chose to pursue it. More to the point than the absence of injury, however, the plea vacation is not "effectively unreviewable on appeal from final judgment" under *Cohen* and its progeny. Simply put, the issue of whether defendant violated the plea agreement, the only substantive issue before us on this first appeal, can be fully reviewed and redressed by this court on direct appeal if defendant is eventually convicted. *See United States v. Eggert*, 624 F.2d 973, 975–76 (10th Cir.1980) (per curiam) (denying interlocutory appeal of district court's denial of motion to dismiss indictment when the argument underlying defendant's motion was that the Government had violated a prior plea agreement). Defendant may be awarded any relief to which he is entitled at that time. There is no justification to consider defendant's claims before then. Because the district court's order in this case clearly does not meet the third *Abney* factor, we need not consider whether it meets the other two. This first appeal is therefore dismissed for lack of final judgment.

## II.

In his second appeal, defendant claims that the indictment filed against him should

---

**3.** Those orders are: (1) denial of a motion to reduce bail, *Stack v. Boyle*, 342 U.S. 1, 6, 72 S.Ct. 1, 4, 96 L.Ed. 3 (1951); (2) denial of a pretrial motion to dismiss an indictment on double jeopardy grounds, *Abney v. United States*, 431 U.S. 651, 659, 97 S.Ct. 2034, 2040, 52 L.Ed.2d 651 (1977); and (3) denial of a Congressman's motion to dismiss criminal charges because he was immune under the speech and debate clause, *Helstoski v. Meanor*, 442 U.S. 500, 506, 99 S.Ct. 2445, 2448, 61 L.Ed.2d 30 (1979).

be dismissed on double jeopardy grounds. The double jeopardy clause of the fifth amendment prohibits successive prosecution for the same offense after acquittal or conviction and prohibits multiple punishments for the same offense. *Brown v. Ohio*, 432 U.S. 161, 165, 97 S.Ct. 2221, 2225, 53 L.Ed.2d 187 (1977). Defendant alleges that jeopardy attached when he pled guilty to the information charging him with conspiracy to commit mail fraud under 18 U.S.C. § 371 (1982). He therefore would face double jeopardy if he is tried under the subsequent indictment charging him with one count of conspiracy to defraud the United States in violation of 18 U.S.C. § 371 and eight counts of mail fraud in violation of 18 U.S.C. § 1341 (1982).

The district court denied defendant's motion to dismiss on the ground that the separate prosecutions of defendant did not violate the fifth amendment. The court held that the offenses charged in the indictment were distinct from those to which he pled guilty, requiring differing essential elements of proof. The court also noted that it doubted jeopardy had attached in this case.

■ The denial of defendant's motion to dismiss generally is not immediately appealable under 28 U.S.C. § 1291 (1982). *United States v. Ritter*, 587 F.2d 41, 43 (10th Cir.1978). However, the Supreme Court has allowed interlocutory review in certain instances when the motion to dismiss is based on a violation of the double jeopardy clause. *Abney*, 431 U.S. at 662, 97 S.Ct. at 2041.

### A.

■ To be considered under the *Abney* exception, defendant's motion to dismiss must first present a colorable claim that he may be twice prosecuted for the same offense. *Richardson v. United States*, 468 U.S. 317, 322, 104 S.Ct. 3081, 3084, 82 L.Ed.2d 242 (1984); *MacDonald*, 435 U.S. at 862, 98 S.Ct. at 1553. Defendant then

shoulders the burden to establish the facts supporting his motion. *Eggert*, 624 F.2d at 975. In this case, therefore, defendant must demonstrate that the offense to which he pled guilty is the same as the offense for which he was indicted. *United States v. Combs*, 634 F.2d 1295, 1296 (10th Cir.1980), *cert. denied*, 451 U.S. 913, 101 S.Ct. 1987, 68 L.Ed.2d 304 (1981).

The Supreme Court delineated the test for determining whether two offenses are the same for purposes of double jeopardy in *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932). "The applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied ... is whether each provision requires proof of a fact which the other does not." *Id.* at 304, 52 S.Ct. at 182.

Defendant argues that the alleged overt acts are the same—both the information and the indictment allege violations of 18 U.S.C. §§ 371, 1341 (1982)—and both offenses require the same proof. Reply Brief of Defendant-Appellant at 7–8. His argument with respect to the eight counts of mail fraud in the indictment is clearly wrong on its face. "[T]he commission of a substantive offense and a conspiracy to commit it are separate and distinct crimes, and a plea of double jeopardy is no defense to a conviction for both." *Pereira v. United States*, 347 U.S. 1, 11, 74 S.Ct. 358, 364, 98 L.Ed. 435 (1954); *see also Iannelli v. United States*, 420 U.S. 770, 777, 95 S.Ct. 1284, 1289, 43 L.Ed.2d 616 (1975).

■ Defendant's claim that the indictment's conspiracy charge is commensurate with the conspiracy charge to which he pled guilty cannot be considered colorable either. Although the district court correctly held that the two conspiracy charges required differing elements of proof, it did not elaborate on the elements. We will therefore explore the differences.

Both the information and indictment charged defendant with violating section 371.[4] However, the information alleged

---

**4.** The statute provides in pertinent part:

If two or more persons conspire either to commit any offense against the United States, or to defraud the United States, or any agency

thereof in any manner or for any purpose, and one or more of such persons do any act to effect the object of the conspiracy, each

conspiracy to commit mail fraud, while the indictment alleged conspiracy to defraud the United States by impeding the lawful functions of the United States Department of Housing and Urban Development. This court has stated that conspiracy to commit mail fraud requires the Government to prove: (1) that a conspiracy to defraud existed, (2) that the defendant was a party to the conspiracy, and (3) performance of an act or acts constituting use of the mails in furtherance of the conspiracy. *United States v. Lynn,* 461 F.2d 759, 761 (10th Cir.1972). Conspiracy to defraud the United States, on the other hand, requires: (1) proof of an agreement to defraud the United States; and (2) proof that one or more persons acted in pursuit of that objective. *United States v. Browning,* 723 F.2d 1544, 1546 (11th Cir.1984); *United States v. Booty,* 621 F.2d 1291, 1297 (5th Cir.1980); *United States v. Downen,* 496 F.2d 314, 318 (10th Cir.), *cert. denied,* 419 U.S. 897, 95 S.Ct. 177, 42 L.Ed.2d 142 (1974). Hence, "each provision requires proof of a fact which the other does not." *Blockburger,* 284 U.S. at 304, 52 S.Ct. at 182. Conspiracy to commit mail fraud requires the Government to show an act constituting use of the mails in furtherance of the conspiracy. Proof of conspiracy to defraud the United States has no requirement regarding the use of the mails, but requires proof of an agreement to specifically defraud the United States.

Similarly, because each conspiracy offense includes an element that the other does not, neither charge can be considered a lesser-included offense of the other. *See Brown,* 432 U.S. at 167–68, 97 S.Ct. at 2226. Thus, defendant has not presented a colorable double jeopardy claim, and his claim does not merit consideration of an interlocutory appeal.

## B.

There is an equally compelling reason to dismiss this appeal as premature, even were we to assume that defendant has a colorable claim. We are not convinced that defendant's claim properly falls within the confines of the *Abney* exception.

In *Abney,* defendants were charged with conspiracy and attempt to violate the Hobbs Act. Despite challenges to the indictment based on the duplicity of offenses, the trial court allowed the Government to proceed with both theories and required it to establish the elements of both offenses. The jury returned a guilty verdict. The Third Circuit reversed the convictions on appeal, because certain evidence had been admitted without adequate authentication, and ordered a new trial. The court also instructed the Government to choose between the conspiracy and attempt charges on remand. The Government chose to proceed on the conspiracy charge. Defendants then moved to dismiss the indictment because retrial would expose them to double jeopardy and because the modified indictment failed to charge an offense. The district court denied the motion, and the Third Circuit affirmed.

The Supreme Court permitted an interlocutory appeal from the pretrial order denying dismissal of the indictment, because the motion for dismissal was based on double jeopardy grounds. The Court first stressed the strict policy, particularly in criminal cases, to permit appellate review only of final decisions. The policy is designed to prohibit disruptions that accompany intermediate appeal which in turn discourage effective administration of the criminal law. *Abney,* 431 U.S. at 657, 97 S.Ct. at 2039. Although the order in *Abney* lacked traditional finality, the Court held that it fell within the "small class of cases" entitled to interlocutory appellate review. *Id.* at 659, 97 S.Ct. at 2040. Applying the *Cohen* three part test, the Court first concluded that the order was final with respect to defendants' double jeopardy claim, because defendants had no further steps to take before having to face a trial which they claimed was constitutionally prohibited. Second, the Court determined that the double jeopardy issue was collateral to the principal issue at trial, because it was independent of defendants' guilt or innocence. The third, and most important, element of the *Cohen* test is whether the

shall be fined not more than $10,000 or imprisoned not more than five years, or both.

18 U.S.C. § 371 (1982).

defendants' rights would be effectively abridged if review were postponed until after a final decision. The Court held that a double jeopardy claim presented just such a case.

> To be sure, the Double Jeopardy Clause protects an individual against being twice convicted for the same crime, and that aspect of the right can be fully vindicated on an appeal following final judgment, as the Government suggests. However, this Court has long recognized that the Double Jeopardy Clause protects an individual against more than being subjected to double punishments. It is a guarantee against being twice put to *trial* for the same offense.

*Id.* at 660–61, 97 S.Ct. at 2041 (emphasis in original). The Court noted that the purpose underlying the double jeopardy clause is to prohibit the State, with its superior power and resources, from repeatedly attempting to convict an individual for an alleged offense, "thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty." *Id.* at 661–62, 97 S.Ct. at 2041 (quoting *Green v. United States,* 355 U.S. 184, 187–88, 78 S.Ct. 221, 223, 2 L.Ed.2d 199 (1957)).

In the case at bar, defendants advance a similar claim, but under different circumstances. In *Abney,* the defendants previously faced prosecution in a trial and had been convicted when they appealed. On appeal, their convictions were reversed and the case remanded. Thus, on remand, defendants faced a second trial, possibly for the same offense. Here, however, defendant pled guilty pursuant to a plea agreement, and his guilty plea was accepted. Defendant then allegedly breached the plea agreement. Consequently, the trial court granted the Government's motion to dismiss the information and vacate the guilty plea.[5] If we were to assume that the offense to which defendant pled guilty is the same as that in the indictment, the issue is then whether *Abney* requires this court to review a pretrial order denying a motion to dismiss an indictment when the underlying double jeopardy contention rests on a claim that the acceptance of defendant's guilty plea constituted adequate former jeopardy.[6]

"[T]he mere recitation of the term 'double jeopardy' in the motion to dismiss does not bring defendant's appeal within the *Abney* exception." *Eggert,* 624 F.2d at 975 (quoting *Ritter,* 587 F.2d at 43). For this appeal to fall within the *Abney* exception, it must present similar double jeopardy concerns—concerns that are important enough to outweigh the strict policy of finality in criminal cases. The Supreme Court in *Abney* focused its concern on the possibility defendant would face a second trial. In a criminal trial, defendant proceeds on the ground he is innocent. He is made to withstand the duration of the trial, not knowing whether he will be convicted or acquitted. If the indictment contains more than one charge, defendant is in peril of being found guilty of one charge, the lesser charge, the greater charge, or guilty of

---

5. Although this appeal involves a plea agreement, it is distinguishable from cases that hold an appeal cannot be taken from a pretrial order denying a motion to dismiss in which the motion is based on a claim that a former plea agreement prohibits bringing the charges alleged in the indictment. Such a claim is based on due process grounds and not double jeopardy. *See John Doe Corp. v. United States,* 714 F.2d 604, 606 (6th Cir.1983); *United States v. Bird,* 709 F.2d 388, 392 (5th Cir.1983); *United States v. Eggert,* 624 F.2d 973, 975 (10th Cir. 1980). *But see United States v. Abbamonte,* 759 F.2d 1065, 1070 (2d Cir.1985) ("an order denying dismissal of an indictment and rejecting a claim that trial was barred by a prior plea agreement was immediately appealable"); *United States v. Alessi,* 536 F.2d 978, 980–81 (2d Cir.) (same), *cert. denied,* 429 U.S. 960, 97 S.Ct. 384, 50 L.Ed.2d 327 (1976).

6. We recognize that there is some debate within this circuit concerning the point at which jeopardy attaches in a guilty plea. *See United States v. Combs,* 634 F.2d 1295 (10th Cir.1980) (Judge Logan, writing for the court, held jeopardy to attach on sentencing; Judge McKay determined jeopardy attached when the guilty plea was accepted; Judge Breitenstein did not reach the issue), *cert. denied,* 451 U.S. 913, 101 S.Ct. 1987, 68 L.Ed.2d 304 (1981). For purposes of this discussion, we will assume that jeopardy attached to defendant.

multiple offenses. The Court underscored these considerations in *Abney* when it commented: "Because of this focus on the 'risk' of conviction, the guarantee against double jeopardy assures an individual that, among other things, he will not be forced, with certain exceptions, to endure the personal strain, public embarrassment, and expense of a criminal trial more than once for the same offense." *Abney*, 431 U.S. at 661, 97 S.Ct. at 2041. The personal strain results not only from not knowing the outcome, but also from the adversarial process at trial, in which the parties are diametrically opposed. The purpose of double jeopardy is to protect the defendant from a second adversarial proceeding in which he is again forced to put forward his case, to prevent him from being subject to yet another trial.

A guilty plea pursuant to a plea agreement, on the other hand, does not place defendant in the same situation as does a trial. A guilty plea is not part of the central adversarial process; it is the result of pretrial negotiation. *Bordenkircher v. Hayes*, 434 U.S. 357, 362–63, 98 S.Ct. 663, 667–68, 54 L.Ed.2d 604 (1978). Although the process may include confrontation, the Supreme Court has characterized it as a "give-and-take negotiation ... between the prosecution and defense, which arguably possess relatively equal bargaining power." *Parker v. North Carolina*, 397 U.S. 790, 809, 90 S.Ct. 1458, 1479, 25 L.Ed.2d 785 (1970). "Plea bargaining flows from 'the mutuality of advantage' to defendants and prosecutors, each with his own reasons for wanting to avoid trial." *Bordenkircher*, 434 U.S. at 363, 98 S.Ct. at 668 (citation omitted).

These judicial comments illustrate the contractual nature of a plea agreement to which both parties negotiate so as to achieve a mutually beneficial result. The benefits defendant may receive reduce or eliminate the risks he faces at trial. The defendant knows what charge or charges of which he will be convicted—only those to which he pleads guilty. As a result of his plea, he may not be charged with other offenses that a prosecutor could have established at trial. Alternatively, other charges in his indictment may be dropped.

A properly administered plea agreement allows a defendant to avoid "extended pretrial incarceration and the anxieties and uncertainties of a trial." *Blackledge v. Allison*, 431 U.S. 63, 71, 97 S.Ct. 1621, 1627, 52 L.Ed.2d 136 (1977). In return for the benefits, defendant must undertake certain obligations. Defendant may agree to testify for the Government or provide other information. In either situation, defendant assumes executory obligations he does not undertake in a trial.

A plea agreement involves a qualitatively distinct type of jeopardy from that which attaches after a trial and conviction. The most important value underlying the prohibition against double jeopardy is the prevention of Government harassment. *Green*, 355 U.S. at 187–88, 78 S.Ct. at 223, *quoted in Abney*, 431 U.S. at 661–62, 97 S.Ct. at 2041; *Breed v. Jones*, 421 U.S. 519, 529–30, 95 S.Ct. 1779, 2041, 44 L.Ed.2d 346 (1975); *Serfass v. United States*, 420 U.S. 377, 387–88, 95 S.Ct. 1055, 1062, 43 L.Ed.2d 265 (1975); and *United States v. Jorn*, 400 U.S. 470, 479, 91 S.Ct. 547, 554, 27 L.Ed.2d 543 (1971). If defendant pleads guilty pursuant to a plea agreement, he is far less likely to be subject to Government abuse. Since defendant negotiates with the Government, presumably from an equal bargaining position, the Government is in less of a position to harass the defendant. Furthermore, the double jeopardy protection is intended to prevent exposure to the *risk* of conviction. *Abney*, 431 U.S. at 661, 97 S.Ct. at 2041. If a defendant pleads guilty, he is not exposed to the risk of conviction. On the contrary, he knows exactly what will happen in the proceeding. Although defendant may suffer anxiety or embarrassment from a plea bargain and guilty plea, it is not the same anxiety or risk involved in a trial. The defendant who pleads guilty does not "run the gauntlet" in the same way a defendant who goes to trial does.

The jeopardy that attaches to a guilty plea is defined by the negotiated plea agreement. It is, in effect, negotiated as well. When the defendant enters into the plea agreement, he undertakes certain obli-

gations and risks that he does not undertake in a trial. The defendant who derives the benefits from the agreement must accept the risks inherent in the conditions as well. The condition is the performance of the executory obligations that he assumes as the quid pro quo. The risk is that the satisfactory performance of his executory obligations may come into issue. The resolution of that dispute is collateral to the merits of the defendant's guilt or innocence and requires different proofs relating to the contracted obligations rather than to the underlying charged crimes themselves. The trial and appeal of such issues implicates a different set of concerns than does a straight-forward consideration of double jeopardy which focuses directly on the criminal charges in the first and proposed second trial. While some of the same concerns that led to *Abney* are present in the case of a voided plea agreement, not all of them are present. The voluntary advantages gained by the pleading defendant and the assumption of executory duties by agreement are all gained at a stage prior to trial, while it is the trial that greatly escalates the jeopardy of the accused.

 The plea agreement, negotiated before trial, is distinguishable from the classic *Abney*-mandated interlocutory appeal and dictates a different result with respect to interlocutory appeal of double jeopardy claims bottomed on voided plea agreements. To the factors already mentioned in balancing the double jeopardy concerns in this situation, we add a concern that the issues involved in voiding a plea agreement are more complicated, usually requiring something akin to a trial and the subsequent review of factual determinations as well as legal issues. Given the contractual nature of the plea agreement and other advantages gained by the accused in the plea setting, we give greater weight to the traditional concerns about piecemeal appeals which were partially abrogated for limited purposes in *Abney*. Thus, we continue in the view that review of trial court decisions setting aside plea agreements must abide the trial of subsequent charges (if any) arguably covered by the plea agreement. We therefore hold that, to the extent double jeopardy claims are based on allegedly wrongfully voided plea agreements, appellate review of the order voiding the agreement must await trial of the subsequent charges allegedly covered in the voided plea agreement. This judgment is a product of the very balancing of competing concerns which *Abney* indulged. We are satisfied that, in this special setting, the balance tilts in favor of those factors militating against interlocutory appeals.

We do not here conclude that when defendant enters into a plea agreement he risks forfeiture of his constitutional right not to be twice put in jeopardy. "[T]he Double Jeopardy Clause protects an individual against being twice convicted for the same crime, and that aspect of the right can be fully vindicated on an appeal following final judgment...." *Abney*, 431 U.S. at 660, 97 S.Ct. at 2041. Defendant only risks forfeiting an authorized, interlocutory *Abney* appeal. Defendant does not even risk that forfeiture without a hearing. He can bring his claims of double jeopardy before the trial court. The trial court will review the claim and determine whether or not defendant met the terms of his agreement. If the trial court rules for the Government, any appeal must abide trial on the new charges. If the court refuses to void the plea agreement—not the situation in this case—and the Government persists in bringing charges arguably the subject of the plea, then *Abney* may well be applicable.

Therefore, we conclude that even if defendant presented a colorable double jeopardy claim, we would not have jurisdiction to hear his appeal before the completion of the trial on the new charges.

DISMISSED.