**UNITED STATES of America, Plaintiff,**

v.

**Alex M. CUNNINGHAM, et al., Defendants.**

**No. CR–2–90–078.**

United States District Court, S.D. Ohio, E.D.

Jan. 28, 1991.

Anthony Gonzales, Tampa, Fla., for defendants.

Michael Burns, Asst. U.S. Atty., Columbus, Ohio, for plaintiff.

## OPINION AND ORDER

GEORGE C. SMITH, District Judge.

This matter is before the Court pursuant to the various motions of Defendant Alex M. Cunningham. Specifically, the defendant has filed a motion asking the Court for severance and a separate trial; a motion asking that the Court dismiss the indictment arguing that the indictment is vague, multiplicious, and in violation of the Double Jeopardy Clause of the Fifth Amendment of the United States Constitution; and a motion arguing that the indictment should be dismissed because the government's previous civil forfeiture of $423,850 was punitive in nature and thus the criminal prosecution of Defendant Alex M. Cunningham would constitute a violation of the Double Jeopardy Clause. The Court will give a brief overview of the status of this case to-date, then address each of the above-referenced matters *seriatim.*

On April 26, 1990, the Grand Jury, then seated in the Southern District of Ohio, Eastern Division, handed down a nine defendant, twenty-eight count indictment, wherein Defendant Cunningham was named in all twenty-eight counts. At the time the Defendant was a fugitive. He was apprehended in Atlanta, Georgia, returned to the Southern District of Ohio and

entered his plea of "not guilty" as to each and every count.

At the time Defendant Cunningham entered his plea, he was represented by Attorney Samuel B. Weiner. Pursuant to an August 30, 1990, Rule 44(c) motion filed by the government, the Court held a hearing to determine whether Attorney Weiner's representation of the defendant constituted a conflict of interest. In an Opinion and Order dated October 10, 1990, the Court held that Attorney Weiner's representation of several co-defendants in a variety of civil forfeiture actions constituted a sufficient link to the case at bar that it required the Court to disqualify Attorney Weiner from representing the defendant.

Subsequent to Attorney Weiner's disqualification, hearings were held concerning seventeen pending discovery motions. Defendant Cunningham advised the Court that he wished to waive counsel and proceed under self-representation. At the October 16, 1990, motions hearing the Court inquired of the defendant his level of education, his degree of experience regarding self-representation, his familiarity with the Federal Rules of Evidence, and a variety of other questions designed to determine the defendant's ability to proceed *pro se*. The Court recognized the defendant's right to waive counsel, however, due to his apparent deficiencies in representing himself, the Court appointed Attorney Richard Cline to be available as "Stand-by Counsel", and to act in an advisory role only at the defendant's request. The Court was thereafter forced to continue the motions hearing in order to give the defendant time to prepare.

On November 5, 1990, the Court held an additional discovery hearing. The defendant again asked for a continuance in order to prepare a response. The Court informed the defendant that no response was mandated inasmuch as the motions to be addressed were filed on his behalf by prior counsel. At that hearing it became apparent to the Court that the defendant was incapable of understanding the content of his own motions. It was further obvious that no reasonable delay would be suffi-

cient in order to permit an individual with his limited education to adequately prepare to argue his own motions. Furthermore, at the hearing the defendant's veracity came into question and his severe speech impediment proved to be an insurmountable obstacle in addressing the Court and arguing his case.

By Opinion and Order dated November 13, 1990, the Court, in the interest of the defendant and his co-defendants, elevated Attorney Cline to Lead Counsel. Attorney Cline moved the Court for a continuance from the December 3, 1990, trial date, to enable Attorney Cline to adequately prepare the case for trial. The case was continued, and a trial date of January 28, 1991, was set.

On December 19, 1991, a Notice of Appearance of Counsel was filed by Attorney Anthony F. Gonzales of Tampa, Florida. The notice advised the Court that Attorney Gonzales would be appearing as counsel for Defendant Cunningham and notified the Court that Attorney Weiner would be acting as local counsel for Defendant Cunningham. Pursuant to the notification concerning Attorney Weiner acting as local counsel, and the fact that the notice appeared to be in direct contradiction with the Court's October 10, 1990, Opinion and Order, the Government filed a Request to Clarify Status of Counsel. The Court held a conference, on the record, in chambers, with Assistant United States Attorney Michael Burns, Attorney Samuel B. Weiner and Attorney Anthony Gonzales present. At the conference Attorney Gonzales renewed his notice of appearance. The Court recognized and noted Attorney Gonzales' representation of Defendant Cunningham, however, the Court further noted and advised all counsel that the late appearance of new counsel for the defendant would not be a basis for continuing the January 28, 1991, trial date. In an Order dated January 11, 1991, the Court reiterated that Attorney Weiner was disqualified from any form of representation of Defendant Cunningham, and provided that counsel are "advised to be prepared to go forward on the scheduled trial date of January 28, 1991."

Since the conference in chambers, Attorney Gonzales has filed the previously mentioned motions. The government has filed responses, and the Court will now turn its attention to these matters.

## DEFENDANT CUNNINGHAM'S MOTION FOR SEVERANCE AND FOR SEPARATE TRIALS

■ The defendant files his motion pursuant to Federal Rules of Criminal Procedure 8 and 14. Rule 8 provides in relevant part as follows:

> (b) *Joinder of Defendants.* Two or more defendants may be charged in the same indictment or information if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses. Such defendants may be charged in one or more counts together or separately and all of the defendants need not be charged in each count.

In reviewing joinder under Rule 8(b), the primary consideration is "whether joinder [will] serve the goal of trial economy and convenience." *Baker v. United States,* 401 F.2d 958, 971 (D.C.Cir.1968), *cert. denied,* 400 U.S. 965, 91 S.Ct. 367, 27 L.Ed.2d 384 (1970), *quoted in United States v. Franks,* 511 F.2d 25, 29 (6th Cir.1975), *cert. denied,* 422 U.S. 1042, 95 S.Ct. 2656, 45 L.Ed.2d 693 (1975).

The United States Court of Appeals for the Sixth Circuit has stated that Rule 8(b) should be "broadly construed in favor of initial joinder." *Franks,* at 29. As stated by the Court in *United States v. Frazier,* 584 F.2d 790, 795 (6th Cir.1978), the "jury must be presumed capable of sorting out the evidence and considering the case of each defendant separately." *United States v. Mitchell,* 556 F.2d 371 (6th Cir. 1977), *cert. denied,* 434 U.S. 925, 98 S.Ct. 406, 54 L.Ed.2d 284 (1977). Moreover, as a general rule, particularly in conspiracy cases, defendants who are jointly indicted should be tried together in the same proceeding. *United States v. Dempsey,* 733 F.2d 392, 398 (6th Cir.1984). However, the mere fact that a conspiracy has not been charged does not indicate that there is a

misjoinder. *United States v. Reed,* 647 F.2d 678 (6th Cir.1981), *cert. denied,* 454 U.S. 837, 102 S.Ct. 142, 70 L.Ed.2d 118 (1981); *United States v. Russo,* 480 F.2d 1228 (6th Cir.1973), *cert. denied,* 414 U.S. 1157, 94 S.Ct. 915, 39 L.Ed.2d 109 (1974).

Rule 14 addresses the severance of joint defendants as a matter of sound judicial discretion. *See, e.g., Pointer v. United States,* 151 U.S. 396, 14 S.Ct. 410, 38 L.Ed. 208 (1894). The text of the rule provides as follows:

> If it appears that a defendant or the government is prejudiced by a joinder of offenses or of defendants ... the court may order an election or separate trials of counts, grant a severance of defendants or provide whatever other relief justice requires.

The defendant carries the heavy burden of demonstrating specific and compelling prejudice, prejudice that may only be cured by a separate trial. *United States v. Warner,* 690 F.2d 545 (6th Cir.1982). The defendant must demonstrate that the "antagonism between co-defendants will mislead or confuse the jury." *United States v. Vinson,* 606 F.2d 149, 154 (6th Cir.1980), *cert. denied,* 444 U.S. 1074, 100 S.Ct. 1020, 62 L.Ed.2d 756 (1980). It should further be noted that claims that evidence may be admissible against one defendant but not the other are not sufficient to justify severance. *Warner,* 690 F.2d at 545; *United States v. Gay,* 522 F.2d 429 (6th Cir.1975). Likewise, the fact that one defendant is more culpable than another defendant is insufficient to allow severance. *Franks,* 511 F.2d at 25.

Upon review of the Defendant's request for severance and in light of the case law previously cited, this Court is of the opinion that all parties were the subject of proper joinder and that severance in the instant matter is not warranted. Therefore, the Defendant's Motion for Severance is hereby DENIED.

## MOTION TO DISMISS THE INDICTMENT (DOC. 39)

The defendant has filed a motion requesting the Court to dismiss the indictment based upon a variety of arguments.

The first argument by the defendant is that Count One of the indictment fails to sufficiently allege an offense against the United States since it does not specifically set forth the time span of the conspiracy alleged and that the count fails to specifically and adequately describe the locale of the alleged offense.

Count one of the indictment provides as follows:

Beginning in 1987 and continuing through and including the date of this Indictment, the exact dates being unknown to the Grand Jury, in the Southern District of Ohio, ALEX M. CUNNINGHAM, aka Stutterman, KATHY L. CARTER, SABRINA RENCHER–TERRELL, TERRI LYNN LATTIMORE, MAX M. SMITH, STEPHANIE R. MATHEWS, MONDELL A. ROBINSON, JACQUELINE HUDSON and BRUCE PEPPERS did knowingly, intentionally and unlawfully combine, conspire, confederate and agree with each other and with diverse other persons, both known and unknown to the Grand Jury, to distribute and to possess with intent to distribute a Schedule II controlled substance, that is over five kilograms of cocaine, in violation of 21 U.S.C. § 841(a)(1) and § 841(b)(1)(A)(ii).

It was a part of the conspiracy that ALEX M. CUNNINGHAM would obtain cocaine from various suppliers for distribution at various locations in the Columbus, Ohio area.

It was further a part of the conspiracy that ALEX M. CUNNINGHAM would carry a firearm to protect the cocaine and the proceeds of his illegal cocaine distribution activities.

It was further a part of the conspiracy that ALEX M. CUNNINGHAM would use co-conspirators to distribute cocaine to customers who would pay for the cocaine. The proceeds would be returned to ALEX M. CUNNINGHAM after the co-conspirators had distributed the cocaine to other persons.

It was further a part of the conspiracy that ALEX M. CUNNINGHAM would hide assets derived from his illegal cocaine distribution activities in the names of relatives, friends and acquaintances including but not limited to, KATHY L. CARTER, TERRI LYNN LATTIMORE, MAX M. SMITH, STEPHANIE R. MATHEWS, MONDELL A. ROBINSON, JACQUELINE HUDSON and BRUCE PEPPERS.

It was further part of the conspiracy that ALEX M. CUNNINGHAM would use automobiles purchased in the names of relatives, friends and acquaintances including, but not limited to, KATHY L. CARTER, TERRI LYNN LATTIMORE, MAX M. SMITH, STEPHANIE R. MATHEWS, MONDELL A. ROBINSON, JACQUELINE HUDSON and BRUCE PEPPERS to transport, pick up and/or deliver cocaine or the proceeds of ALEX M. CUNNINGHAM'S illegal cocaine distribution activities.

In violation of 21 U.S.C. § 846.

In reviewing Count One of the indictment it is abundantly clear that the government has sufficiently set forth the time span of the conspiracy and the locale of the offense. Therefore, the defendant's first argument is not well taken.

■ The defendant's second argument provides that Count One of the indictment is vague and lacks specificity, thereby denying the defendant his Due Process rights. Again, upon review of the Count as set forth in the indictment, there can be no mistake as to with what the defendant is being charged. The Count alleges a conspiracy involving numerous individuals, many of which are named in the indictment, over approximately a three year period of time. The conspiracy revolves around the alleged trafficking of quantities of cocaine in excess of five (5) kilograms. The defendant is well aware of the nature of the offense with which he is charged and he can thus prepare his defense accordingly. Therefore, the defendant's second argument is not well taken.

The defendant's third argument is that a variety of the counts are multiplicious. "'Multiplicity' is the charging of a single offense in separate counts." *United States v. Hairrell*, 521 F.2d 1264 (6th Cir.

1975) *citing*, Wright, *Federal Practice and Procedure*, § 142, p. 306 (1969 ed.). The vice of multiplicity, as provided by Wright, *Federal Practice and Procedure: Criminal 2d*, § 142, p. 475 (1982 ed.), is "that it may lead to multiple sentences for the same offense ..." To determine whether there is multiplicity, the Court is called upon to examine whether one offense or separate offenses are charged. The test most often utilized is that the offenses are deemed separate if each requires proof of an additional fact that the other does not. *See, e.g., United States v. Woods*, 568 F.2d 509, 514 (6th Cir.), *cert. denied*, 435 U.S. 972, 98 S.Ct. 1614, 56 L.Ed.2d 64 (1978); *United States v. Barnett*, 418 F.2d 309 (6th Cir.1969).

In reviewing the indictment and the arguments of the defendant, the Court is of the opinion that the counts contained in the indictment are not multiplicious. Therefore, the defendant's third argument is likewise not well taken and as such, the defendant's motion for dismissal is hereby DENIED.

## DEFENDANT'S SECOND MOTION TO DISMISS THE INDICTMENT (DOC. 38)

The defendant's final motion moves the Court for an Order dismissing the indictment, arguing that the prosecution of the indictment would be in violation of the Double Jeopardy Clause of the Fifth Amendment to the Constitution of the United States.

### A. FACTS

The defendant's argument surrounds the forfeiture of $423,850 that the defendant apparently admits was his, and which was allegedly used to purchase approximately thirty (30) kilograms of cocaine. A civil complaint of forfeiture was filed on April 19, 1990. Notice of Seizure of the currency was published on April 26, May 2, and May 9, 1990, in *The Daily Reporter*, a newspaper of general circulation in the Southern District of Ohio. Subsequent to publication of the notices, the Government filed a Motion for Default Judgment and Decree of Forfeiture, and an Affidavit in Support of the Motion for Default Judgment and De-

cree of Forfeiture. The Government moved for a default judgment which was granted by the Court, thereby forfeiting the $423,850 to the Government. The Defendant Alex M. Cunningham now stands trial under a twenty-eight count indictment.

### B. ANALYSIS

█ The defendant argues that by penalizing Defendant Cunningham through the use of a civil forfeiture of $423,850, the Government is precluded by the Double Jeopardy Clause of the Fifth Amendment of the United States Constitution from pursuing criminal charges against the defendant. The defendant argues that this case falls within the constraints as set forth in the Supreme Court's decision of *United States v. Halper*, 490 U.S. 435, 109 S.Ct. 1892, 104 L.Ed.2d 487 (1989).

In the case of *United States v. Halper*, the defendant was the manager of a company which provided medical services for patient eligible for federal Medicare benefits. The defendant was convicted, *inter alia*, of submitting 65 false claims for Government reimbursement in violation of the criminal false-claims statute. He was sentenced to a term of imprisonment and fined $5,000. The Government then brought a civil action against the defendant under the federal civil False Claims Act, 31 U.S.C. §§ 3729–3731, upon which the District Court granted summary judgment against the defendant based solely upon his conviction. The remedial provision of the False Claims Act provided that a person in violation of the Act is "liable to the United States Government for a civil penalty of $2,000, an amount equal to 2 times the amount of damages the Government sustains, because of the act of that person and costs of the civil action." *Id.* at § 3729. Given that the defendant had violated the Act 65 separate times, the defendant was subject to a statutory penalty of $130,000. The District Court, in light of the huge penalty and the prison sentence, coupled with a fine, ruled that such a statutory penalty would be in violation of the Double Jeopardy Clause. The United States took a

direct appeal to the Supreme Court pursuant to 28 U.S.C. § 1252.

In *Halper* the Court held that "under the Double Jeopardy Clause a defendant who already has been punished in a criminal prosecution may not be subjected to an additional civil sanction to the extent that the second sanction may not fairly be characterized as remedial, but only as a deterrent or retribution." *Id.* 490 U.S. at 448–49, 109 S.Ct. at 1902. The Court went to great lengths to create a very narrow holding. The opinion provides as follows:

> What we announce now is a rule for the rare case, the case such as the one before us, where a fixed-penalty provision subjects a prolific but small-gauge offender to a sanction overwhelmingly disproportionate to the damages he has caused. The rule is one of reason: Where a defendant previously has sustained a criminal penalty and the civil penalty sought in the subsequent proceeding bears no rational relation to the goal of compensating the Government for its loss, but rather appears to qualify as "punishment" in the plain meaning of the word, then the defendant is entitled to an accounting of the Government's damages and costs to determine if the penalty sought in fact constitutes a second punishment.

The defendant argues that his forfeiture of what the Government has alleged to be illegal drug proceeds, and the subsequent forthcoming criminal trial, places his case within the constraints of the *Halper* decision. This Court strongly disagrees. *Halper* is clearly distinguishable in virtually every material aspect.

The forfeiture of alleged drug proceeds and the subsequent criminal trial is hardly "the rare case" as enunciated in *Halper*. Furthermore, if Defendant Cunningham is convicted of the crimes for which he is indicted, he could hardly be classified as the "prolific but small-gauge offender".

And additionally, presuming the forfeiture of funds was a punitive act, if the Defendant is in fact convicted of trafficking in the amounts of cocaine described in the indictment, coupled with a conviction on the 21 U.S.C. § 848 Continuing Criminal Enterprise charge found in Count Twenty-eight of the Indictment, the sanction of both the forfeiture of $432,850 and a lengthy prison sentence would not be "overwhelmingly disproportionate to the damage he has caused." [1]

■ Nonetheless, this Court is of the opinion that the forfeiture of the funds is not a punitive act. The word "punitive" is defined as "[r]elating to punishment; having the character of punishment or penalty; inflicting punishment or a penalty" *Black's Law Dictionary* 1110 (5th ed. 1979); Such is not the case with the forfeiture of illgotten gains. Rather than punishing a defendant the forfeiture acts to prevent a defendant from profiting from his or her illegal activity. Essentially, this Court is of the opinion that money taken from society through illegal activity then subsequently forfeited is merely maintaining the *status quo* and cannot be labeled punitive in nature.

Therefore, the defendant's second motion for dismissal is deemed to be a frivolous Double Jeopardy Clause argument, and is thus, hereby DENIED.

■ Furthermore, it has been brought to the Court's attention, and it is the Court's understanding that the Defendant may wish to obtain an immediate interlocutory appeal of this Court's denial of the motion to dismiss based upon the Double Jeopardy Clause argument. It is with that in mind that this Court makes the following observations and sets forth a scheduling order.

The right to appeal is created by statute. 28 U.S.C. § 1291. The statute provides, "The courts of appeal shall have jurisdiction of appeals from all final decisions of

---

1. Taking defendant's motion to its logical conclusion, defendant would argue that criminal prosecution and forfeiture are inherently incompatible. The Government would be forced to chose to either forfeit criminal assets, or prosecute, convict and penalize the defendant; but never both. Defendant would argue that once the Government has made its choice it would be precluded from pursuing the alternative. Clearly, such an approach would tie the hands of the prosecution and be contrary to the legislative intent of the respective statutes.

the district courts of the United States ..." For the defendant to be permitted to appeal at this time his appeal must fall within either the statutory provision or the common-law exception to the statute. The exception to 28 U.S.C. § 1291, is the collateral-order doctrine enunciated in *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949). Beyond the collateral-order doctrine, the Courts have strictly adhered to the policy of finality to avoid piecemeal review. *United States v. Hollywood Motor Car Co.*, 458 U.S. 263, 265, 102 S.Ct. 3081, 3082, 73 L.Ed.2d 754 (1982). "Adherence to this rule of finality has been particularly stringent in criminal prosecutions because 'the delays and disruptions attendant upon intermediate appeal,' which the rule is designed to avoid, 'are especially inimical to the effective and fair administration of the criminal law.'" *Abney v. United States*, 431 U.S. 651, 657, 97 S.Ct. 2034, 2039, 52 L.Ed.2d 651 (1977) (quoting *DiBella v. United States*, 369 U.S. 121, 126, 82 S.Ct. 654, 658, 7 L.Ed.2d 614 (1962)).

The Supreme Court in *United States v. MacDonald*, 435 U.S. 850, 98 S.Ct. 1547, 56 L.Ed.2d 18 (1977), discussed the delicate balance between meeting the defendant's request for an immediate appeal and the right to a speedy trial as set forth by the Sixth Amendment of the Constitution provides as follows:

Many defendants, of course, would be willing to tolerate the delay in a trial that is attendant upon a pretrial appeal in the hope of winning that appeal. The right to a speedy trial, however, "is generically different from any of the other rights enshrined in the Constitution for the protection of the accused" because "there is a societal interest in providing a speedy trial which exists separate from, and at times in opposition to, the interest of the accused." *Barker v. Wingo*, 407 U.S. [514], at 519 [92 S.Ct. 2182, 2186, 33 L.Ed.2d 101 (1972)]. See also *United States v. Avalos*, 541 F.2d 1100, 1110 (CA5 1976), cert. denied, 430 U.S. 970 [97 S.Ct. 1656, 52 L.Ed.2d 363] (1977). Among other things, delay may prejudice the prosecution's ability to prove its case,

increase the cost to society of maintaining those defendants subject to pretrial detention, and prolong the period during which defendants released on bail may commit other crimes. *Dickey v. Florida*, 398 U.S. 30, 42 [90 S.Ct. 1564, 1571, 26 L.Ed.2d 26] (1970) (Brennan, J., concurring).

*MacDonald*, at 862, 98 S.Ct. at 1553. Therefore, it must be noted that any lengthy appeal will egregiously and detrimentally impinge upon all of the defendants' rights to a speedy trial.

With that in mind the Court further notes that the denial of a pretrial motion to dismiss generally is not immediately appealable under 28 U.S.C. § 1291 (1982). *United States v. Ritter*, 587 F.2d 41, 43 (10th Cir.1978). However, the Supreme Court has at times allowed interlocutory review in certain instances when the motion to dismiss is based on a violation of the double jeopardy clause. *Abney v. United States*, 431 U.S. 651, 662, 97 S.Ct. 2034, 2041, 52 L.Ed.2d 651 (1977); *see also, United States v. Goland*, 897 F.2d 405 (9th Cir.1990); *United States v. Weeks*, 870 F.2d 267 (5th Cir.1989), cert. denied, —— U.S. ——, 110 S.Ct. 92, 107 L.Ed.2d 57; *United States v. Barcelona*, 814 F.2d 165 (5th Cir.1987), cert. denied, 483 U.S. 1022, 107 S.Ct. 3268, 97 L.Ed.2d 767; *United States v. Ciancaglini*, 858 F.2d 923 (3rd Cir.1988); *United States v. Cejas*, 817 F.2d 595 (9th Cir.1987).

To be considered under the *Abney* exception, however, defendant's motion to dismiss must first present a *colorable claim* that he may be twice prosecuted for the same offense. *Richardson v. United States*, 468 U.S. 317, 322, 104 S.Ct. 3081, 3084, 82 L.Ed.2d 242 (1984); *MacDonald*, 435 U.S. at 862, 98 S.Ct. at 1553. (emphasis added). "[T]he mere recitation of the term 'double jeopardy' in the motion to dismiss does not bring defendant's appeal within the *Abney* exception." *United States v. Eggert*, 624 F.2d 973, 975 (10th Cir.1980) (quoting *Ritter*, 587 F.2d at 43).

Even a cursory review of Defendant Cunningham's motion for dismissal, based upon a double jeopardy argument, is suffi-

848

cient to realize that the defendant fails to bring a colorable claim as required under *Richardson,* and the motion is simply frivolous. *See also, United States v. Thompson,* 814 F.2d 1472 (10th Cir.1987) and *Abney, supra,* at 662, n. 8 ("frivolous claims of former jeopardy" may be weeded out by summary procedures). It appears clear to this Court that the term "double jeopardy" and the citation to *United States v. Halper* is merely an attempt to bring the defendant's appeal under the *Abney* exception so as to permit an immediate appeal and forestall the existing trial date. However, this Court is of the opinion that the failure to bring a colorable claim and the frivolous nature of the motion precludes the immediate appeal of this Court's denial of the motion to dismiss.

Therefore, given this Court's position on the issue of appealability of the instant Opinion and Order, the Court will commence this trial on schedule at 9:30 a.m., January 30, 1991.

IT IS SO ORDERED.