UNITED STATES of America,
Plaintiff-Appellant,

v.

Carl J. LONDON et al.,
Defendants-Appellees.

No. 75–3597.

United States Court of Appeals,
Fifth Circuit.

April 6, 1977.

John W. Stokes, Jr., U.S. Atty., William P. Gaffney, Asst. U.S. Atty., Atlanta, Ga., for plaintiff-appellant.

Robert B. Thompson, Gainesville, Ga., for C. London and Town & Country.

Charles W. Stephens, Gainesville, Ga., for M. London.

Before TUTTLE, GOLDBERG and RONEY, Circuit Judges.

GOLDBERG, Circuit Judge:

This case presents the question whether an indictment charging defendants with concealing or covering up by trick, scheme, or device a material fact in violation of 18 U.S.C. § 1001 is insufficient solely because it fails to specify the precise trick, scheme or device allegedly used.[1]

The district court dismissed fourteen counts of an indictment that charged the appellees, Carl and Maylon London, with concealing and covering up by trick, scheme, or device material facts in their dealings with the Farmers Home Administration. The fourteen counts identify the material facts concealed, the government agency involved, the transactions to which the facts were material, the dates of the transactions, and all participants in those transactions. The indictment tracks the statutory language in alleging that the appellees effected the concealment "by trick, scheme, or device," but fails to offer any factual elaboration. Upon the authority of *United States v. Harris*, 217 F.Supp. 86

(M.D.Ga.1962), the lower court held that the indictment was insufficient because it failed to set forth any essential facts regarding the trick, scheme or device.

We reverse. Although we are sensitive to the difficulty presented by applying the "trick, scheme, or device" language to the facts of this case, we do not think the difficulty should be resolved at the indictment stage. The indictment taken as a whole sufficiently protected the defendants against the possibility of double jeopardy and adequately apprised them of the charges so that they might prepare a defense. We pass only on the sufficiency of the indictment. With but incomplete and untried facts on which to rely, we do not venture to guess whether the government can succeed in proving the "trick, scheme, or device" element of those charges. We think that a question better left for the jury and the trial court.

## I.  Facts

Carl London and his brother Maylon were officers and directors of Town and Country Builders, Inc., which constructed homes in rural areas of Georgia. Town and Country sold more than twenty homes to persons who financed their acquisitions in part by Rural Housing loans from the federal Farmers Home Administration. We say "in part" because although a Rural Housing loan normally covers the full purchase price, the appellees were allegedly selling the homes for a price exceeding that stated in the loan application to the Farmers Home Administration. To make up the difference between the actual purchase price of the homes and that stated on Rural Housing loan applications, Town and Country extended additional loans secured by second mortgages on the acquired property. In all cases Town and Country's lien was

---

1.  18 U.S.C. § 1001 provides:

Whoever, in any matter within the jurisdiction of any department or agency of the United States knowingly and willfully falsifies, conceals or covers up by any trick, scheme, or device a material fact, or makes any false, fictitious or fraudulent statements or representations, or makes or uses any false writing or document knowing the same to contain any false, fictitious or fraudulent statement or entry, shall be fined not more than $10,000 or imprisoned not more than five years, or both.

junior to the purchase money lien of the Farmers Home Administration.

■ The federal government, through the Secretary of Agriculture and the Farmers Home Administration, makes and insures loans to enable rural dwellers otherwise unable to do so to purchase adequate housing. *See* 42 U.S.C. §§ 1471–83. The regulations of the U.S. Department of Agriculture provide that the amount of the loan is ordinarily limited to the value of the security less any other liens outstanding. Furthermore, the regulations provide that a loan will not ordinarily be made if a lien junior to the Rural Housing mortgage likely will be taken simultaneously with, or immediately subsequent to, the closing of the loan, unless the junior lien plus the Rural Housing lien and any prior lien will not interfere with repayment.[2] The purpose of these regulations is to prevent an applicant from overextending himself.

At the time of the closing of the loan, seller and borrower file papers in which both attest to the absence of unfiled or unrecorded liens against the property. The borrower executes a deed in which he promises that the property will not be further encumbered without the government's consent. The attorney designated to handle the closing for the Farmer's Home Administration is responsible for furnishing preliminary and final title opinions and for explaining to the borrower the prohibition against further encumbrances without the government's consent.

Carl London directly participated in the sale and financing of homes secured by the Rural Housing mortgages. Maylon London, although not involved in the daily operation of Town and Country, was designated to handle loan closings for the Farmers Home Administration and was in fact the closing attorney in four Rural Housing loans for homes sold by Town and Country. In three of these transactions he signed the second mortgage as notary. Neither brother informed the Farmers Home Administration that Carl was taking second mortgages on the homes to cover the amounts by which the actual purchase prices exceeded those stated on the loan applications.

The Government secured a thirty-seven count indictment charging either or both of the appellees with conspiring to defraud the United States in violation of 18 U.S.C. § 371, making false statements in violation of 18 U.S.C. § 1001, and concealing and covering up material facts in violation of § 1001. The district court dismissed the fourteen counts charging concealing and covering up.[3] Eleven of these charged that the appellee(s) concealed the fact that Town and Country was taking a second mortgage against property that secured a Rural Housing loan.[4]

---

2. 7 C.F.R. § 1822.7(e)(3)(1976) provides that, subject to certain qualifications,

>    Ordinarily, a loan docket will not be developed or approved when a loan plus any other liens against the security would be in excess of the value of the security as recommended by the appraiser or 90 percent of such value, whichever is appropriate . . .

7 C.F.R. § 1822.7(h)(1976) provides:

>    A loan will not be made if a lien junior to the RH mortgage likely will be taken simultaneously with or immediately subsequent to closing of the loan to secure any debts he may incur in connection with the RH loan purposes, such as debts for a portion of the purchase price of the land or for money borrowed from others for payments on debts against the property or for part of the construction cost, unless such a lien plus the RH loan and any prior lien will not interfere with the purposes of the loan or repayment thereof and either will be entirely within the mar-

ket value of the security or will exceed such market value only by an amount which will meet the requirements of paragraph (e)(3) of this Section.

3. Carl London was subsequently convicted of one count of violating 18 U.S.C. § 371 (conspiracy to defraud the United States) and thirteen counts of violating the false statement provision of 18 U.S.C. § 1001. On the one count remaining against Maylon London, which charged him with conspiracy under 18 U.S.C. § 371, a mistrial was declared after the jury failed to reach a verdict.

4. Count Three is typical of the counts that the district court found to be defective:

>    That, on or about the 2nd day of March, 1971, in the Northern District of Georgia, CARL J. LONDON did knowingly and wilfully conceal and cover up by trick, scheme, and device, material facts in a matter within the

## II. Sufficiency of the Indictment

Each count of the indictment stated a material fact that appellees allegedly concealed, but none specified by what trick, scheme or device the fact was concealed. The government does not dispute the notion that the "by trick, scheme, or device" language represents an essential element of the offense charged. We shall show that by proceeding under the little-used "concealment by trick, scheme or device" clause of § 1001 rather than the more commonly applied "false statement" clause, the government undertook the burden of proving at trial the means of concealment. The issue immediately at hand, however, is whether the district court correctly held that the bare allegation of a "trick, scheme, or device" was insufficient for purposes of indictment.

### A. Did the Indictment Sufficiently Inform Appellees of the Charges Against Them?

The Supreme Court has held that an indictment is sufficient if it, first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense. *Hamling v. United States,* 418 U.S. 87, 117, 94 S.Ct. 2887, 2907, 41 L.Ed.2d 590 (1974). *See also United States v. Briggs,* 514 F.2d 794, 801 (5th Cir. 1975). The appellees do not seriously urge that the indictment is so vague that they could be in danger of further prosecution placing them in double jeopardy. Hence the point in contention is whether the indictment fairly informs the appellees of the charges against which they must defend.

■ There can be little doubt that the indictment adequately performed its function of alerting the defendants to the charges against them. Each concealment count pointed to a specific transaction, the date of that transaction, the parties participating, the fact concealed, and, by virtue of the nature of the transaction, the materiality of the concealed fact. Although the trick, scheme or device was not specifically identified, it is clear that the government supposed that the appellees' failure to inform the Farmers Home Administration of the existence or imminence of second mortgages on the property securing the Rural Housing loan—a second mortgage made necessary by the sale of homes at a price greater than that represented on the loan applications—constituted the essential concealment. Whether that "concealment" comprised a trick, scheme, or device was, to be sure, a separate question, but it is a question of the legal significance of those words. The appellees could have been in no doubt regarding the accusation notwithstanding the fact that the indictment merely tracked the words of the statute in alleging a "trick, scheme, or device."

■ It is generally sufficient that an indictment set forth the offense in the words of the statute itself as long as those words fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offense intended to be punished. *See Hamling v. United States,* supra, 418 U.S. at 117, 94 S.Ct. at 2907; *United States v.*

---

jurisdiction of the Farmers Home Administration, an agency of the United States Department of Agriculture: that is, he concealed and covered up the fact that proceeding, simultaneously with or immediately subsequent to the closing of a Farmers Home Administration Rural Housing Loan to Freddy B. and Linda H. Slaton, made for the purpose of enabling this family to obtain an adequate dwelling, there was taken out a lien against said dwelling junior to the purchase money lien of the Farmers Home Administration to secure debts of the borrower incurred in connection with the acquisition of said

dwelling, in violation of Title 18, United States Code, Section 1001.

Three of the fourteen counts dismissed were related to appellees' concealing the fact of Town and Country's second mortgages. Two accused Carl London of concealing the fact that the borrowers named on loan applications did not intend at the time of closing to reside in the houses purchased with the Rural Housing loan. The third count accused Carl of concealing the fact that one borrower was seventeen years old and hence lacked the legal capacity to contract on the loan.

*Lester,* 541 F.2d 499, 501 (5th Cir. 1976); *Downing v. United States,* 348 F.2d 594, 599 (5th Cir. 1965). This is not a case in which guilt depends crucially on a specific identification of fact left obscure by the mere repetition of a statutory term. *See Russell v. United States,* 369 U.S. 749, 764, 82 S.Ct. 1038, 1047, 8 L.Ed.2d 240 (1962) (where indictment under 2 U.S.C. § 192 charged that defendants refused to answer questions "pertinent" to a subject under inquiry by a Congressional committee but failed to identify that subject, indictment was deficient for failing to apprise defendant of the accusation). The crucial transactions relied upon to demonstrate the offense were identified. *See United States v. Smith,* 523 F.2d 771, 779 (5th Cir. 1975). The appellees could have elicited additional details regarding those transactions by a bill of particulars. The test is not whether the indictment might have been drawn with greater certainty and exactitude, but rather whether it set forth the elements of the offense charged and sufficiently apprised defendants of the charges. *United States v. Markham,* 537 F.2d 187, 193 (5th Cir. 1976), *cert. denied,* —— U.S. ——, 97 S.Ct. 739, 50 L.Ed.2d 752 (1977). The validity of the indictment must be determined by practical, not technical, considerations. *Id.* at 192.

■ We think practical considerations compel the conclusion that the indictment, which was so detailed in every other respect, was not deficient solely because it failed to provide factual elaboration upon the statutory terms, "conceals . . . by any trick, scheme, or device". The district court's judgment consequently cannot be upheld for the reasons it adduces.

### B. Did the Indictment State an Offense under § 1001?

■ The questions whether an indictment sufficiently apprises a defendant of the charges against him and whether an indictment states an offense are both conceptually and procedurally distinct.[5] An in-

dictment that fails to allege each material element of an offense fails to charge that offense.

This is not a case in which the indictment failed to allege each element of the offense. *See United States v. Mekjian,* 505 F.2d 1320 (5th Cir. 1975) (failure of § 1001 indictment to charge that defendant *willfully* made false statements); *United States v. McGough,* 510 F.2d 598 (5th Cir. 1975) (§ 1001 indictment must allege or otherwise indicate *materiality* of statement); *United States v. Moore,* 185 F.2d 92 (5th Cir. 1950) (§ 1001 indictment must allege that concealment or false statement related to matter within the *jurisdiction* of a federal agency).

■ The inquiry whether an indictment states an offense does not cease with a demonstration of the fact that it alleges each material element of a crime. Taking the allegations as true, the appellees' conduct may still not constitute an offense under the conceal or cover up clause of § 1001. For example, in *Hamner v. United States,* 134 F.2d 592 (5th Cir. 1943), the indictment charged that defendants had concealed and covered up by trick, scheme, or device the acquisition of tires for purposes of reselling them without rationing certificates at excess prices. We dismissed the indictment because the scheme of wartime regulation did not require that tires be exhibited to a federal agency. Consequently, although the defendants might have been guilty of making false writings, their conduct was not susceptible of an accusation under the conceal or cover up clause of § 1001.

Other counts of the indictment with which we are not directly concerned here charged the appellees under the false statement provision. The only question we must deal with presently is whether the appellees' alleged conduct constituted a violation of the conceal or cover up provision of § 1001. This line of inquiry places at issue first the materiality of the allegedly concealed facts and second the importance of

---

5. For example, Rule 12(b)(2), F.R.Cr.P., provides that objections that an indictment fails to state an offense may be made at any time during the pendency of the criminal proceeding, but that other objections to defects in the indictment must be raised prior to trial.

the "trick, scheme, or device" language of the statute.

The appellees argue that the indictment was defective because the concealed fact that Town and Country had taken second mortgages on the property securing the Rural Housing loan might not have precluded the loan had the Farmers Home Administration known of that fact. That is, the regulation prohibits not all junior liens but only those that interfere with the purpose of the loan. *See* 7 C.F.R. § 1822.7(h), note 2 *supra.* We reject this argument. Although it may not be initially clear what kinds of junior liens will interfere with the purpose of the loan, that junior liens encumber the property is itself a material fact that must not be concealed. Whether a particular junior lien interferes with the purpose of a loan to finance the purchase of the underlying property is a matter for the determination of the federal agency involved, not the sellers of the property.

Next, however, it might be argued that although tracking the statutory language of "trick, scheme, or device" may be sufficient to apprise the defendants of the accusation, no conduct alleged by the government rises to the level of a trick, scheme, or device, but rather evinces mere nondisclosure. There are two possible responses to this contention. First, it might be said that the "trick, scheme, or device" language is superfluous. Alternatively, it might be argued that the appellees' conduct may indeed have constituted concealment by trick, scheme, or device, and that the government should be allowed to try to substantiate this at trial. We reject the former and choose the latter course.

Although the government does not contest the notion that concealment "by trick, scheme, or device" constitutes an essential element of the offense charged, it might be the case that the language was intended solely to illustrate some means of concealment and was therefore mere surplusage. We think a fair reading of the statute militates against this construction.

Section 1001 contains three operative clauses. The third concerns one who makes false writings, the second one who makes false statements or representations, and the first one who "falsifies, conceals or covers up by any trick, scheme, or device . . ." The phrase, "by trick, scheme, or device" obviously modifies all three preceding verbs. Had their intentions been otherwise the authors of the statute would have placed the non-modified verbs directly after the "by trick, scheme, or device" phrase.

It is a fair assumption that false writings, statements, and representations include all conduct that might be described as "falsifying." Consequently, the use of "falsifies" in the first clause is entirely redundant unless effect is given to the "by trick, scheme, or device" language. For it is only the latter phrase that differentiates falsehoods charged under the first clause from those charged under the second or third.

This construction of the statute is supported by policy considerations. In construing a statute that will often come dangerously close to trenching on fifth amendment rights, one ought not punish concealments or false statements that fall short of constituting affirmative acts. Otherwise, for example, a person under investigation by the FBI who issues an exculpatory denial in response to the agency's inquiries might be punished for concealing material information or making a false statement. *See United States v. Lambert,* 501 F.2d 943, 946 n. 2A–4 (5th Cir. 1974) (en banc); *United States v. Bush,* 503 F.2d 813 (5th Cir. 1974). The requirement of an affirmative act is implied in the second clause of § 1001 by the statute's proscription of false *statements. See Paternostro v. United States,* 311 F.2d 298 (5th Cir. 1962). The requirement of an affirmative act is implied in the third clause by the proscription of a knowingly false *writing.* Unless full effect is given to the "trick, scheme, or device" phrase in the first clause, however, it would be possible to construe the terms "conceal or cover up" to embrace mere nondisclosure.

We have held, in enunciating the so-called "exculpatory no" doctrine, that es-

sentially negative answers to questions propounded by investigating government officials are not statements within the meaning of the second clause of § 1001 in the absence of some affirmative, aggressive, or overt falsehood on the defendant's part. *See Paternostro v. United States, supra,* (negative answer given to IRS agent). *See also United States v. Bedore,* 455 F.2d 1109, 1110–11 (9th Cir. 1972) (denial of identity to FBI agents); *Frasier v. United States,* 267 F.2d 62 (1st Cir. 1959) (denial of communist affiliation on a loyalty certificate). It would surely eviscerate the "exculpatory no" doctrine to hold that courts might punish under the first clause of § 1001 for passively *concealing* the requested *true* information a defendant whom they could not punish under the second clause for *uttering false* information, particularly because the former will always be entailed by the latter.

We therefore conclude that full effect must be given to the "trick, scheme, or device" language of the first clause of § 1001 and that this language implies the requirement of an affirmative act by which means a material fact is concealed. Recent decisions interpreting § 1001 are entirely consistent with this construction. For example, in *United States v. Markham, supra,* 537 F.2d at 192–93, this court upheld the sufficiency of a § 1001 indictment that "described four separate actions taken by the defendant to conceal the material facts" at issue. In that case the defendant was charged with concealing and covering up the identity of the true inventor of a process sought to be patented. The indictment charged that the scheme included the defendant's causing a patent application to be filed in the names of two persons who were not the true inventors and his filing a series of misleading statements with the Patent Office by which he "intended to convey that [the two persons who were not the true inventors] were the original inventors" of the process. *Id.* at 193.[6]

Consequently, should the government choose to pursue the indictment to trial, it will have the burden of demonstrating not merely that the appellees passively failed to disclose the existence of the second mortgages, but rather that the appellees committed affirmative acts constituting a trick, scheme, or device by which they sought to conceal material facts. It is possible that the conduct alleged in the indictment did involve such a trick, scheme, or device. Therefore, out of an abundance of caution we think the indictment should not be dismissed for failure to state an offense and the jury and the trial court should be entrusted with determining whether appellees' conduct fell within the statutory proscription.

If, for example, the appellees induced the purchasers of their homes to make false statements regarding material facts in applications for Rural Housing loans, and appellees independently sought to prevent the government from finding out the falsity of such statements, it is possible the jury might find that such conduct constituted a trick, scheme, or device. *Cf. McClanahan v. United States,* 230 F.2d 919 (5th Cir. 1956) (§ 1001 violation where defendants induced veterans to purchase homes with Veterans Administration loan guaranties while concealing fact that veterans intended not to occupy homes but to convey homes to defendants for resale). Nevertheless we caution the government

---

**6.** *See Morgan v. United States,* 114 U.S.App. D.C. 13, 309 F.2d 234 (1962) (§ 1001 violation where defendant concealed fact of his nonadmission to bar by affirmatively holding himself out to be a particular lawyer who was duly authorized member of the bar); *United States v. Steiner Plastics Manufacturing Co.,* 231 F.2d 149, 152 (2d Cir. 1956) (§ 1001 violation where scheme to defraud purchaser, the federal government, involved switching approval stamps and serial numbers from approved items to unapproved items); *United States v.*

*White,* 69 F.Supp. 562 (S.D.Cal.1946) (§ 1001 violation where scheme to conceal location of illegal aliens by transporting them in closed and covered van); *but see United States v. Lozano,* 511 F.2d 1 (7th Cir. 1975) (§ 1001 concealment violation where defendant aided and abetted a woman who went through a sham marriage in order to obtain permanent resident alien status for her ostensible husband and who failed to disclose the fact that her marriage was a sham).

that the mere omission of failing truthfully to disclose a material fact, which is simply the negative aspect of the affirmative act of falsely stating the same material fact, does not make out an offense under the conceal or cover up clause of § 1001.[7] Rather, the latter clause of § 1001 requires the government to prove something more—that the material fact was affirmatively concealed by ruse or artifice, by scheme or device.

We give to the government its day in court, although we are without conviction that it will convict. Indeed we admonish the government that, should it renew the refrain of indictment *allegata*, at trial it had best ascertain the concealment *probata*.

The judgment of the district court is reversed and the cause remanded for proceedings not inconsistent with this opinion.

REVERSED AND REMANDED.

---

7. *Cf. Dear Wing Jung v. United States*, 312 F.2d 73 (9th Cir. 1962) (for purposes of collateral estoppel, conceal and cover up count and false statement count are two distinct federal offenses because the former involves a trick, scheme, or device).