UNITED STATES of America

v.

David M. DALE, et al.

Crim. No. 90–27.

United States District Court,
District of Columbia.

Aug. 14, 1991.

Mark Dubester, Asst. U.S. Atty., Washington, D.C., for U.S.

Roger Spaeder, Washington, D.C., for Dale.

Michele Roberts, Washington, D.C., for Ashton.

W. Gary Kohlman, Washington, D.C., for Sweeney.

R. Stan Mortenson, Washington, D.C., for Segal.

Robert F. Muse, Washington, D.C., for Automated Data Corp.

## MEMORANDUM

JOHN GARRETT PENN, District Judge.

### I. Introduction

Defendants Automated Data Management, Inc. ("ADM"), David M. Dale ("Dale"), Michelle Ashton ("Ashton"), Terrence Sweeney ("Sweeney"), and Martin

Segal ("Segal") are charged in a ten count Indictment with conspiracy,[1] subscribing to and aiding and assisting in the preparation and presentation of false and fraudulent tax returns,[2] attempted tax evasion,[3] wire fraud,[4] false statements,[5] concealing facts by trick, scheme and artifice,[6] and aiding and abetting.[7] In short, the Indictment alleges that defendants participated in a scheme whereby they created and used overseas companies under their control for tax evasion purposes. This case presently comes before the Court on a number of motions filed by defendants: (1) Defendants' Motion to Dismiss Count One; (2) Defendants' Motion to Dismiss Count Two; (3) Defendants' Motion to Dismiss Count Five; and (4) Defendants' Motion to Dismiss Counts Six through Ten. Each of these motions will be addressed in turn.

## II. Motion to Dismiss Count One

Count One charges all defendants with conspiracy to defraud the United States and to commit substantive offenses against the United States. It charges a single conspiracy to defraud the United States by impeding, impairing, obstructing and defeating the functions of the Internal Revenue Service in the assessment and collection of income taxes, and to commit the following substantive offenses against the United States: (1) tax evasion in violation of 26 U.S.C. § 7201; (2) subscribing to a false tax return and aiding and abetting the preparation of a false tax return in violation of 26 U.S.C. §§ 7206(1), (2); and (3) making false statements to and concealing material facts by trick, scheme and device from the Internal Revenue Service, the Small Business Administration and the Department of Defense in violation of 18 U.S.C. § 1001. The conspiracy statute provides, "If two or more persons conspire *either* to commit any offense against the United States, *or* to defraud the United States, ... each shall be fined ... or im-

prisoned ... or both." 18 U.S.C. § 371 (emphasis added).

Defendants move to dismiss as duplicitous the conspiracy count, since it charges the defendants with conspiracy under both the "specific offenses" clause and under the "defraud" clause of § 371. Defendants argue that a count which alleges violation of both clauses of the conspiracy statute violates Rule 8(a) of the Federal Rules of Criminal Procedure because it charges two separate offenses. Defendants further argue that Count One subjects them to the risk of conviction by less than a unanimous jury, and fails to adequately inform them of the real charges. Alternatively, defendants move to strike the defraud language from the indictment as surplusage.

Duplicity is the joining of two or more *offenses* in a single count. *See* Fed. R.Crim.P. 8(a). This circuit has already decided that a violation of both prongs of § 371 may be alleged in a single count of an indictment without charging more than one offense. *See May v. United States*, 175 F.2d 994 (D.C.Cir.) (affirming conviction of a United States Congressman who had been charged in a single count with conspiracy to defraud the United States and to commit specified substantive offenses), *cert. denied*, 338 U.S. 830, 70 S.Ct. 58, 94 L.Ed. 505 (1949). In *May*, the court reasoned that "neither a multiplicity of objects nor a multiplicity of means converts a single conspiracy into more than one offense." *Id.* at 1002 (footnote omitted). This rule is consistent with Supreme Court precedent: "The allegation in a single count of a conspiracy to commit several crimes is not duplicitous, for 'The conspiracy is the crime, and that is one, however diverse its objects.'" *Braverman v. United States*, 317 U.S. 49, 54, 63 S.Ct. 99, 102, 87 L.Ed. 23 (1942) (*quoting Frohwerk v. United States*, 249 U.S. 204, 210, 39 S.Ct.

---

**1.** 18 U.S.C. § 371.

**2.** 26 U.S.C. §§ 7206(1), (2).

**3.** 26 U.S.C. § 7201.

**4.** 18 U.S.C. § 1343.

**5.** 18 U.S.C. § 1001.

**6.** 18 U.S.C. § 1001.

**7.** 18 U.S.C. § 2.

249, 252, 63 L.Ed. 561 (1919)). Thus, "[s]ince the law of conspiracy allows for schemes with more than one object, the fact that a count may allege conspiracy *both* to commit offenses against the United States *and* to defraud the United States does not necessarily make that count duplicitous." *United States v. Recognition Equipment, Inc.*, 711 F.Supp. 1, 7 (D.D.C. 1989) (emphasis in original) (*citing United States v. Treadwell*, 760 F.2d 327, 335–36 (D.C.Cir.1985), *cert. denied*, 474 U.S. 1064, 106 S.Ct. 814, 88 L.Ed.2d 788 (1986)).

Recent decisions from other jurisdictions have also considered whether a single count charging a conspiracy to defraud the United States and to commit substantive offenses violates the rule against duplicity; they have followed the *May* reasoning and held likewise. *See, e.g., United States v. Smith*, 891 F.2d 703, 711–13 (9th Cir.1989) (indictment charging conspiracy to defraud United States and to commit substantive offenses in single count was not unconstitutionally duplicitous; two clauses of section 371 establish alternate means of commission rather than two distinct conspiracy offenses); *United States v. Williams*, 705 F.2d 603, 623–24 (2d Cir.), *cert. denied*, 464 U.S. 1007, 104 S.Ct. 524, 78 L.Ed.2d 708 (1983) (rejecting appellants' duplicity claim where indictment charged in a single count conspiracy to defraud the United States and to commit substantive offenses); *United States v. Berlin*, 707 F.Supp. 832, 836 (E.D.Va.1989) (rejecting duplicity argument, relying on *May*). *See also United States v. Treadwell*, 760 F.2d at 336 ("[A] single conspiracy may contemplate ... the violation of one or more federal statutes in addition to defrauding the United States."). Thus, despite its age, *May* remains good law and retains current vitality.

Defendants nevertheless invite this Court to reconsider the *May* holding in light of the statutory interpretation of § 371 in *United States v. Minarik*, 875 F.2d 1186 (6th Cir.1989). Defendants also rely on *United States v. Haga*, 821 F.2d 1036, 1039 (5th Cir.1987) and *United States v. Thompson*, 814 F.2d 1472, 1477 (10th Cir.), *cert. denied*, 484 U.S. 830, 108 S.Ct.

101, 98 L.Ed.2d 61 (1987) in urging a reevaluation of *May*.

At the outset, it is worth mentioning that none of the cases cited by defendants dealt with the duplicity argument presently before this Court. In *Minarik*, the defendant was not charged under both prongs of the conspiracy statute. The one-count indictment charged the defendant with willfully conspiring "to defraud the United States by impeding, impairing, obstructing and defeating the lawful functions of the Department of the Treasury." *Minarik*, 875 F.2d at 1188. The defendant was convicted although at trial the government proved only the existence of a conspiracy to violate a specific statute, 26 U.S.C. § 7206(4). The Sixth Circuit affirmed the district court's order granting the defendant's motion for judgment notwithstanding the verdict, since the defendant had not been charged with the offense prong of § 371, on the ground that the proof was at variance with the indictment.

The court reasoned that "the 'offense' and 'defraud' clauses as applied to the facts of this case are mutually exclusive, and the facts proved constitute only a conspiracy under the offense clause...." *Id.* at 1187. Throughout the period from the return of the indictment through the trial, the government's theory of the case had evolved; the court found these theories to be "significantly dissimilar" resulting in the presence of confusion. *Id.* at 1189. The court further felt that the divergence between the defendants' duty under the specific offense clause and that assumed by their indictment under the defraud clause of § 371 generated unnecessary and avoidable confusion. *Id.* at 1195. "Such confusion in a criminal prosecution is not permissible when an indictment for conspiracy to commit the offense ... would have provided all the clarity that was missing." *Id.* Consequently, the Court held that conspiracies to commit specific offenses should be prosecuted exclusively under the offense clause of § 371 rather than under the defraud clause in order to avoid unnecessary confusion. *Id.* at 1194. The court, however, appears to limit this holding to situations where a Congressional statute

closely defines those duties of a citizen which are "technical and difficult to discern". *Id.* at 1196.

*United States v. Haga* similarly involved a situation where the court found there was a fatal variance between the indictment and the proof of the conspiracy; the prosecution charged under the offense clause of § 371, but the proof at trial supported a conviction on the defraud clause. Although no duplicity argument was advanced or addressed by the court, it stated, "Count I must have charged a conspiracy *either* to 'commit any offense' *or* to 'defraud the United States'; it cannot have charged both." *United States v. Haga,* 821 F.2d at 1043 (emphasis in original).

Finally, in *United States v. Thompson,* the court was presented with a double jeopardy claim by a defendant who had first been charged with conspiracy to commit mail fraud and later charged with conspiracy to defraud the United States. The court held that the crimes were distinct since each requires proof of an element which the other does not, and permitted the subsequent prosecution. *Id.* at 1477. Again, the court was not presented with a duplicity argument.

Defendants contend that *Minarik, Haga* and *Thompson* hold that the defraud and offense clauses of § 371 constitute two separate offenses such that an indictment which charges, in a single count, a conspiracy to violate both prongs of the statute cannot stand. Additionally, defendants argue that *Minarik* interprets § 371 to require the government to indict either for a conspiracy to defraud the United States or for a conspiracy to commit specific offenses, for any given course of alleged criminal conduct. According to defendants, *Minarik* further holds that where there is a specific criminal statute covering the course of action complained of, the government is obliged to charge a conspiracy to commit that offense. Conversely, under *Minarik* the government would be allowed to charge a conspiracy to defraud the United States only in circumstances where there is no federal criminal statute which covers the complained of activity. Relying on *Minarik,* defendants thus argue that the government's theory of this case only supports the allegation that defendants conspired to commit offenses against the United States. As gleaned from the indictment and as described in the government's response to defendants' motion for a bill of particulars, defendants assert:

> [T]hat both of the conspiracy charges in count 1 are based on the same course of conduct conducted in order to accomplish the same goal, that is, the government is arguing in this case that what occurred was these defendants caused money to be transferred overseas to foreign corporations related to their corporation in the United States; that they made personal use of some of those funds; and then the purpose of these transactions was to defraud the government of revenues properly due from those transactions.

Tr. at 147.[8] Indeed, the government has categorically stated that its theory of the case is that the defendants created and used overseas companies under their control for three means of tax evasion. Government's Opposition to Defendants' Motion for a Bill of Particulars at 1. Defendants argue that there are substantive statutes which amply cover the alleged wrongful conduct; i.e., tax evasion, filing of false returns and making false statements to government agencies. Defendants thus apply their analysis of *Minarik* to conclude that, under these circumstances, the government's conspiracy allegations must be grounded on the offense prong of the conspiracy statute. Moreover, defendants argue that the government was wrong to charge a conspiracy to defraud since this charge only reaches conspiracies to engage in certain fraudulent conduct not otherwise prohibited by federal law. Finally, defendants assert that the charging language in the Indictment regarding defrauding the United States is confusing and exposes the defendants to the unconstitutional risk of a conviction by a less than unanimous jury.

---

**8.** Tr. refers to the transcript of the Motions Hearing held on April 25, May 1–2, 1990.

In the Court's view, *Minarik, Haga,* and *Thompson* do not require dismissal of the conspiracy count on grounds of duplicity. The Court reaches this conclusion for several reasons. First, defendants erroneously read *Minarik* to state that § 371 creates two separate offenses. In fact, *Minarik* affirmatively cites precedent, including *May,* for the proposition "that § 371 creates *one* crime that may be committed in *one of two* alternate ways." *Minarik,* 875 F.2d at 1193 (emphasis in original). The *Minarik* court found this conclusion to be "entirely consistent with the rule requiring courts to give penal statutes a narrow interpretation." *Id.* Moreover, to the extent that *Haga* and *Thompson* imply that § 371 creates two separate conspiracy offenses, they are rejected. *See United States v. Smith,* 891 F.2d at 712.

Additionally, *Minarik* does not broadly decide that § 371 creates two mutually exclusive ways of proceeding with a conspiracy charge, as defendants contend. Rather *Minarik* must be limited to its facts, especially since the court specifically held that "the 'offense' and 'defraud' clauses *as applied to the facts of this case* are mutually exclusive." *Id.* at 1187. *Minarik* dealt with a situation where the factual allegations in the indictment and the evidence adduced at trial *only* showed that defendants conspired to commit a specific offense; it clearly does not consider the possibility that any given course of alleged criminal conduct might encompass a conspiracy both to commit offenses specifically defined elsewhere in the federal criminal code and to defraud the United States. As such, it does not support defendants' contention that an indictment may not properly charge in a single count a conspiracy to commit offenses and to defraud.

Finally, even if the Court were to accept defendants' interpretation of *Minarik,* this interpretation does little to advance their duplicity claim. In short, defendants argue that *Minarik* requires the government to charge a conspiracy under the "offense" clause where there is a specific federal crime covering the alleged wrongful conduct, and permits the government to charge a conspiracy under the "defraud"

clause only where there is no federal crime that covers the alleged wrongful conduct. In defendants' view, since the alleged wrongful conduct in this case is amply proscribed by federal criminal statutes, the government should not be permitted to charge them under both prongs of § 371, or even under the defraud clause standing alone. This interpretation of § 371 is only tangentially related to defendants' duplicity claim and, consequently, does little to advance it. For these reasons, defendants' duplicity argument must be rejected.

■ Although they characterize their motion as a duplicity challenge, defendants' attack on Count One should more appropriately be viewed as a challenge, pursuant to *Minarik,* to the Indictment's conspiracy to defraud language on grounds that there exist criminal statutes which define defendants' duties such that *only* a conspiracy to commit these offenses should be plead. Accordingly, the Court will turn now to defendants' alternative request; that the court strike as surplusage the defraud language from Count One. Defendants contend that the government will use the same evidence to seek to prove both objects—i.e., defrauding the government and violating specific offenses—of the conspiracy. The government does not appear to dispute this contention. On this point, the government argues that using the same evidence to establish at trial alternate means of committing the single conspiracy is not an impermissible charging mechanism, even if it has the effect of giving the jury two bites at the apple.

■ Insofar that *Minarik* holds that the government may not charge a conspiracy to defraud in lieu of a conspiracy to commit specific offenses when "it is clear that Congress has specifically considered a given pattern of wrongful conduct and enacted a specific statute with a specific range of penalties to cover it," *Minarik,* 875 F.2d at 1193, this Court will follow that well-reasoned approach. We agree that under those circumstances the differing legal duties presented and the possibly resulting variance between charge and proof will cre-

ate unacceptable confusion. The instant case is distinguishable, however, because the government has charged under *both* prongs of the conspiracy statute. The government will seek to prove that defendants' actions violated both the duties of the defraud clause and the duties of the offense clause. In so doing, the government must define precisely what duties the defendants were under and how defendants breached those duties. This situation does not implicate the concerns about divergence and confusion which form the basis for the *Minarik* decision. In *Minarik*, the court noted that the government's "changing theories presented defendants with a moving target as they attempted to prepare their defense." *Id.* at 1189. It is unlikely in this case that the Court, defendants and the jury will be presented with changing legal theories. Rather, it is expected that the government will argue at trial, as it has alleged in the indictment, that through a multiplicity of means—defrauding the government and committing specified offenses—the defendants violated § 371. There is no reason to suspect that this will be confusing or unfair. Moreover, merely because the government will use the same evidence to establish both objects of the conspiracy does not make it so. Accordingly, defendants' request to strike as surplusage the defraud language in count one is denied.

### III. Motion to Dismiss Count Two

Defendants ADM and Dale move to dismiss Count two on grounds that it does not apprise them of the charges against them with the specificity required by the Sixth Amendment and because the provisions of 26 U.S.C. § 7206(1) are so vague as to deny due process. Count Two of the Indictment charges ADM and Dale with making false statements under the penalties of perjury on a United States corporate income tax form in violation of 26 U.S.C. § 7206(1), often referred to as "tax perjury." *See, e.g., United States v. Doan,* 710 F.2d 124 (3rd Cir.1983); *see also Kolaski v. United States,* 362 F.2d 847, 848 (5th Cir.1966) (The gist of the offense of perjury, under both the general perjury statute and the

internal revenue perjury statute, is a false statement, wilfully made, of material matter.) Defendants themselves have referred to § 7206 as the "tax perjury statute." Tr. at 151. Section 7206(1) provides in pertinent part:

Any person who—

**(1) Declarations under penalties of perjury.—**

Wilfully makes and subscribes any return, statement, or other document, which contains or is verified by a written declaration that it is made under the penalties of perjury, and which he does not believe to be true and correct as to every matter; ...

shall be guilty of a felony....

Count Two of the Indictment tracks the statutory language of § 7206(1); it charges that defendants ADM and Dale did: "wilfully make and subscribe a United States Corporate Income Tax Return ... which was verified by a written declaration that it was made under the penalties of perjury ... which said return [ADM and Dale] did not believe to be true and correct as to every material matter...."

The Court finds that neither of the grounds asserted by defendants warrant dismissal of Count Two. First, the defendants' contention that Count Two suffers from a lack of specificity is groundless. In order to meet the requirements of the Sixth Amendment, an indictment must contain every element of the offense charged and must fairly apprise the accused of the conduct allegedly constituting the offense so as to enable him to prepare a defense against those allegations. *United States v. Ramos,* 666 F.2d 469, 474 (11th Cir.1982) (*citing Hamling v. United States,* 418 U.S. 87, 117, 94 S.Ct. 2887, 2907, 41 L.Ed.2d 590 (1974)). "It is generally sufficient that an indictment set forth the offense in the words of the statute itself, as long as 'those words of themselves fully, directly and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offense intended to be punished.'" *Id.* (*quoting Hamling v. United States,* 418 U.S. at 117, 94 S.Ct. at 2907). As shown

previously, the language contained in Count Two tracks the language of § 7206(1). Moreover, as the government correctly asserts, Count Two also sets forth those matters which are alleged to constitute the false statements. The Court finds that the Indictment's tracking of the statutory language, supplemented by specific allegations of the alleged false statements which make up the charge, are sufficient to satisfy the level of specificity required by the Sixth Amendment.

Defendants nevertheless complain that Count Two lacks specificity because it refers to declarations made "under the penalties of perjury" and, in their view, the offense described by § 7206(1) is an offense other than perjury. According to defendants, it is reasonable to infer from the legislative histories of § 7206(1) and the general federal perjury statute, *see* 18 U.S.C. § 1621, that the offense described by § 7206(1) of the Internal Revenue Code is not a species of the perjury statute. Defendants draw this puzzling inference from the fact that the penalties for making false statements on tax returns have been penalties peculiar to the Internal Revenue Code since 1954. Regardless of any variance in penalties between the tax perjury statute and the general federal perjury statute, the plain language of the tax perjury statute makes clear that it is designed to punish perjury. Accordingly, the Court must reject defendants rather strained interpretation of § 7206(1).

Defendants second argument, which also relies on this interpretation of § 7206(1), similarly has no merit. Defendants argue that § 7206(1) is void for vagueness because it does not apprise defendants as to what conduct they must avoid in order to escape liability under the provisions of the statute. Defendants contend that § 7206(1) is misleading because it suggests that a false declarer will be prosecuted under the provisions of the federal perjury statute rather than § 7206(1). In defendants view, § 7206 does not include a definition of the conduct which will trigger criminal liability under its provisions since § 7206 proscribes conduct other than perju-

ry. The Court has already rejected this argument and need not discuss it further. Moreover, a plain reading of § 7206(1) reveals that there is nothing vague or misleading about its terms. Accordingly, defendants' motion to dismiss Count Two on grounds of vagueness and lack of specificity will be denied.

### IV. Motion to Dismiss Count Five

Defendants ADM, Dale, Ashton, and Sweeny move to dismiss Count Five of the Indictment. Count Five charges these defendants with wire fraud in violation of 18 U.S.C. § 1343. Count Five alleges that as part of a scheme to "defraud the United States of tax revenues by means of false and fraudulent representations in United States tax returns" the defendants caused $316,000 to be transferred by wire from ADM's Washington, D.C. bank account to the designated Swiss bank account of a Swiss investment company named Bourbonia as payment for consulting work. The Indictment further alleges that Bourbonia had not in fact performed consulting work for ADM and that a portion of the $316,000 was later transferred to a company controlled by defendants. The purpose of this scheme, according to the government, was to permit ADM to take a phony tax deduction on its 1986 corporate income tax return.

The $316,000 wire transfer and its treatment on ADM's 1986 corporate income tax return also serve as factual bases for those counts of the Indictment which allege violations of the federal criminal income tax laws. In Count Two, ADM and Dale are charged with subscribing to a false return in violation of 26 U.S.C. § 7206(1). Count Three charges Ashton, Sweeney, and Segal with aiding and abetting in the preparation and presentation of a false and fraudulent return in violation of 26 U.S.C. § 7206(2). Finally, all defendants are charged in Count Three with attempted tax evasion in violation of 18 U.S.C. § 2 and 26 U.S.C. § 7201.

These defendants contend that Count Five must be dismissed for two reasons. First, defendants rely on *United*

*States v. Henderson,* 386 F.Supp. 1048 (S.D.N.Y.1974), which broadly held that Congress did not intend to apply the federal mail fraud statute to a scheme to defraud the United States of tax revenues by evading the payment of income taxes. The issue presented appears to be one of first impression in this circuit. In *Henderson,* the defendant was charged with three counts of mail fraud along with basic income tax evasion counts in connection with a tax evasion scheme involving inflated deductions for charitable donations. Two of the mail fraud counts stemmed from mailing the tax returns during the tax years at issue. The third count was based upon a letter mailed by the defendant to the donee in which the defendant proposed the donation and overvalued the property at issue. The *Henderson* court dismissed the mail fraud counts finding that they were being used impermissibly in an attempt to pyramid sentences in the event of a conviction, since they were "bottomed on essentially the same allegations as those required to sustain the tax evasion and perjury counts brought under the appropriate provisions of the Internal Revenue Code[.]" *Id.* at 1054. Defendants thus urge the Court to adopt the reasoning in *Henderson* and apply it to the instant action.

This Court must decline defendants' invitation to apply the holding of *Henderson* to the wire fraud charge in this case. It is patently clear to this Court that there is little support for the *Henderson* decision, even in the circuit from which it arose. In *United States v. Regan (Regan II),* 713 F.Supp. 629 (S.D.N.Y.1989), a recent case decided in the same district as *Henderson,* the court rejected defendants' claim that they could not be indicted under the mail and wire fraud statutes for attempting to defraud the United States of income tax revenue. *Id.* at 635. In so holding, the court refused to follow *Henderson.* The *Regan II* court reviewed the bases underlying the *Henderson* decision and found that they were either inapplicable or no longer persuasive rationales. *Id.* at 635.

After conducting an exhaustive review of the relevant case law, the *Regan II* court further explained that *Henderson* has been

rejected or distinguished in virtually all of the reported cases that cite the opinion. *Id.* at 634–35 (collecting cases). While it is not necessary to re-examine each of these decisions, it is worth mentioning that the Second Circuit has questioned and rejected *Henderson* in cases involving distinguishable fact patterns, decisions in the Southern District of New York have disapproved of the *Henderson* approach, and other circuits have refused to follow *Henderson.* *See, e.g., United States v. Computer Sciences Corp.,* 689 F.2d 1181, 1187 n. 13 (4th Cir.1982), *cert. denied,* 459 U.S. 1105, 103 S.Ct. 729, 74 L.Ed.2d 953 (1983); *United States v. Mangan,* 575 F.2d 32, 49 (2d Cir.), *cert. denied,* 439 U.S. 931, 99 S.Ct. 320, 58 L.Ed.2d 324 (1978); *United States v. Miller,* 545 F.2d 1204, 1216 n. 17 (9th Cir.1976), *cert. denied,* 430 U.S. 930, 97 S.Ct. 1549, 51 L.Ed.2d 774 (1977); *United States v. Standard Drywall Corp.,* 617 F.Supp. 1283, 1295–96 (S.D.N.Y.1985). Despite this backdrop, defendants have notably made no effort to distinguish the instant case from the multitude of cases which reject or criticize the *Henderson* holding. More importantly, defendants have cited no cases which follow the *Henderson* ruling. The government thus correctly states that *Henderson* stands alone for the proposition that the mail fraud statute was not intended to reach the crime of tax evasion. In view of the overwhelming authority which stands at odds with the approach taken in *Henderson* and defendants' failure to distinguish the instant case from that authority, this Court is reluctant to embrace its broad ruling.

■ The second argument advanced by defendants in support of their motion to dismiss Count Five is that a scheme to defraud the United States of tax revenue does not constitute a scheme to deprive the government of "property", within the meaning of *McNally v. United States,* 483 U.S. 350, 107 S.Ct. 2875, 97 L.Ed.2d 292 (1987). In *McNally,* the Supreme Court held that the mail fraud statute is "limited in scope to the protection of property rights," and does not reach "schemes to defraud citizens of their intangible rights

to honest and impartial government." *Id.* at 355, 107 S.Ct. at 2879. Defendants argue that the tax revenue at issue cannot be considered tangible property rights because the United States does not have a property right in the income of a taxpayer prior to assessment. In reaching this conclusion, defendants provide a thorough discussion of the administrative and judicial hoops through which the government must jump to collect on taxes. According to defendants, the Internal Revenue Service has no right of any kind with respect to any deficiency in taxes until a tax return is filed, a deficiency has been determined, and the taxpayer has been notified. Since this process indisputably has not taken place with respect to the tax revenues at issue, defendants insist that the government does not have a tangible property right to this money within the meaning of *McNally.*

Citing *Regan II* in support, the government contends that the defendants' alleged scheme to defraud the government of money falls squarely within *McNally. Regan II* is very similar to the factual situation herein. In *Regan II,* defendants were charged with conspiracy, RICO charges, mail and wire fraud, securities fraud, and subscribing to and aiding and assisting in the preparation and presentation of false and fraudulent tax returns. They similarly argued that "no plan to defraud the United States of money or property can be alleged in connection with their alleged tax trading scheme, because the federal government has no property right in a taxpayer's income until a notice of tax deficiency is sent to the taxpayer." *Id.* at 633. Thus, in *Regan II,* the district court was confronted with the precise argument which is presently before this Court.

Taking a common sense approach to defendants' claim therein, the *Regan II* court soundly rejected the proposition that since the tax had yet to be assessed or determined, the government had no "tangible right" to the property. The court stated:

> An attempt fraudulently to hide income from the government in order to pay less taxes than is legally due is a scheme to defraud the government of money. Defendants' effort to obscure this common

sense reality by focusing their argument on the administrative steps which the Internal Revenue Service must follow to collect taxes due is quite frankly a waste of time.

The same conclusion has been uniformly reached by other courts that have addressed this issue. *See, e.g., United States v. Bucey,* 876 F.2d 1297, 1309 (7th Cir. 1989); *United States v. Doe,* 867 F.2d 986, 988–989 (7th Cir.1989); *United States v. Porcelli,* 865 F.2d 1352 (2nd Cir.), *cert. denied,* 493 U.S. 810, 110 S.Ct. 53, 107 L.Ed.2d 22 (1989); *United States v. Herron,* 825 F.2d 50, 57 (5th Cir.1987). This Court is in agreement with the preceding line of cases. Accordingly, defendants' motion to dismiss Count Five is denied.

**V. Motion to Dismiss Counts Six through Ten**

Finally, defendants ADM, Dale and Ashton move pursuant to Fed.R.Crim.P. 12(b) to dismiss Counts Six through Ten of the Indictment on grounds that these counts fail to state an offense against the United States. "An indictment that fails to allege each material element of an offense fails to charge that offense." *United States v. London,* 550 F.2d 206, 211 (5th Cir.1977). Counts Six through Ten charge these defendants with violating 18 U.S.C. § 1001— the "false statement" statute—by failing to disclose material facts and making false statements on forms they submitted to the Department of Defense. The specific allegations of these counts are as follows. Counts Six and Seven allege that Ashton and Dale, on behalf of ADM, intentionally failed to disclose, on their respective "Personnel Security Questionnaires", that they owned and had business connections with Shaffham, Ltd., a Hong Kong company, and Gemona Ltd., a Hong Kong company, in response to a question which asked: "Do you have any foreign property or business connections or have you ever been employed by or acted as a consultant or representative for a foreign government, firm or agency?". Counts Eight and Nine similarly allege that Ashton and Dale, on behalf of ADM, intentionally failed to disclose

their ownership of and business connections with these Hong Kong companies in documents entitled "Statement of Full Disclosure of All Foreign Connections", which documents required that all foreign connections be disclosed. Count Ten charges ADM, Ashton and Dale with falsely answering "no" to the question "Does your organization have interlocking directors with foreign interests?" in a document entitled "Certificate Pertaining to Foreign Interests."

Defendants set forth four reasons why Counts Six through Ten of the Indictment are legally insufficient. First, defendants argue that neither the facts alleged to have been concealed in Counts Six through Nine nor the false statements alleged in Count Ten are material as a matter of law. Additionally, defendants contend that Counts Six through Nine fail to sufficiently allege the "trick, scheme, or device" by which the facts were allegedly concealed. Moreover, defendants assert that Count Ten fails to state an offense under 18 U.S.C. § 1001 because the alleged false statement in that count is not false as a matter of law. Finally, defendants argue that Counts Six through Ten do not state an offense since the false statements and concealed facts alleged in these counts fall within the "exculpatory no" doctrine. Each of defendants' arguments will be addressed in turn.

### a. *Materiality*

▮▮▮▮▮ The documents that form the basis for Counts Six through Ten of the Indictment were submitted to the Department of Defense in connection with the defendants' application for a security clearance. Defendants contend that the alleged false statements and concealed facts on these forms are not material as a matter of law.

The Court finds that the statements at issue are material. This Circuit has described the materiality requirement as follows:

> The test of materiality is whether the statement "has a natural tendency to influence, or was capable of influencing, the decision of the tribunal in making a

[particular] determination." Proof of actual reliance on the statement is not required; the Government need only make a reasonable showing of its potential effects.

*United States v. Hansen,* 772 F.2d 940, 949 (D.C.Cir.1985) (*quoting United States v. Diggs,* 613 F.2d 988, 999 (D.C.Cir.1979), *cert. denied,* 446 U.S. 982, 100 S.Ct. 2961, 64 L.Ed.2d 838 (1980)), *cert. denied,* 475 U.S. 1045, 106 S.Ct. 1262, 89 L.Ed.2d 571 (1986). The agency's purpose in its security clearance inquiry, in defendant's view, is to ensure that classified information is only released to those persons and entities who do not pose a security risk. Thus, defendant's argue, the inquiries about "foreign connections," "foreign interests," and "foreign businesses" are directed toward determining whether an individual or a facility would pose such a risk because they were under the influence of a foreign national or an entity controlled by foreign nationals whom are enemies of the United States. Here the falsifications related to defendants' ownership of foreign corporations. As such, they "pertain[ ] specifically to the area the [Department of Defense] is charged to investigate." *Id.* at 950. Clearly, had the defendants told the investigators that they owned the Hong Kong corporations, the investigators would have been prompted to take additional steps and make inquiries into the nature of the businesses to determine if they were a security risk to the United States. Thus, the information had a "natural tendency to influence" the government function. Moreover, defendants' contention that the information would not and could not have had any effect upon the government's decision to grant a security clearance because the corporations are owned entirely by American citizens is not relevant to the materiality issue. By this claim, defendants apparently seek to have the Court determine materiality on the basis of whether the Department of Defense would have granted the security clearance if defendants' ownership of the Hong Kong corporations had been revealed. Materiality, however, is not concerned with whether the alleged omission would have affected the ultimate agency

determination. Thus, similar challenges to materiality have been rejected. *See, e.g., United States v. London,* 550 F.2d at 212. Accordingly, the Court finds that the alleged false statements are material as a matter of law.

#### b. *Sufficiency of the "Trick, Scheme or Device" Allegations*

■■■ Defendants also challenge Counts Six through Nine of the Indictment which charges violations of 18 U.S.C. § 1001 on grounds that these counts do not sufficiently charge concealment by "trick, scheme or device." Under this statute, it is a crime to conceal by any trick, scheme, or device any matter within the jurisdiction of any department or agency of the United States. "The elements of an offense under the concealment portion of the statute are: (1) knowingly and willfully; (2) concealing and covering up by trick, scheme, or device; (3) a material fact; (4) in any matter within the jurisdiction of a department or agency of the United States." *United States v. Swain,* 757 F.2d 1530, 1533 (5th Cir.) (citations omitted), *cert. denied,* 474 U.S. 825, 106 S.Ct. 81, 88 L.Ed.2d 66 (1985). In the Indictment, the government alleges that ADM, Ashton and Dale "concealed ... by trick, scheme and device, material facts which [defendants] were under an obligation to disclose ... said trick, scheme and device being the intentional failure to disclose said facts...."

The precise issue before the Court is whether the indictment charging defendants with concealing or covering up by trick, scheme, or device a material fact is insufficient because it defines the trick, scheme or devise used as the intentional failure to disclose information which defendants were under an obligation to disclose. Defendants contend that the indictment is insufficient because it does not allege an affirmative act by which the facts are concealed as required by *United States v. London.* In defendants' view, these counts allege "a mere failure to disclose" information and, as such, cannot constitute a "trick, scheme or device." In *London,* the court stated, "[T]he mere omission of failing truthfully to disclose a material

fact, which is simply the negative aspect of the affirmative act of falsely stating the same material fact, does not make out an offense under the conceal or cover up clause of section 1001." *Id.* at 214 (footnote omitted).

Defendants' argument must be rejected. The government correctly asserts that a person's deliberate failure to disclose to the government material facts, in the face of a duty to disclose such facts, constitutes an "affirmative act" within the contemplation of the statute. For this reason, the government contends, defendants' nondisclosure is distinguishable from a "passive failure to disclose" or "mere silence in the face of an unasked question." The Court agrees. "Generally, a defendant cannot be prosecuted under § 1001 for concealing material facts unless he had a duty to disclose the material facts at the time he was alleged to have concealed them." *United States v. Nersesian,* 824 F.2d 1294, 1312 (2d Cir.1987) (citation omitted). *See also United States v. Perlmutter,* 656 F.Supp. 782, 789 (S.D.N.Y.) ("While the concealment of a fact that no one has a legal duty to disclose may not be a violation of this section, ... such is not the case where a regulation or form requires disclosure."), *aff'd,* 835 F.2d 1430 (2d Cir.1987), *cert. denied,* 485 U.S. 935, 108 S.Ct. 1110, 99 L.Ed.2d 271 (1988). The case law is clear that the deliberate failure to disclose material facts in the face of a specific duty to disclose such information constitutes a violation of the concealment provision of § 1001. Since the Indictment in fact alleges that defendants failed to disclose material facts to the Department of Defense which they had an obligation to disclose, the Court concludes that the indictment sufficiently charges concealment by "trick, scheme or device" *in violation of* § 1001.

#### c. *Falsity*

■■■ Defendants Dale, Ashton and ADM have moved for dismissal of Count Ten of the Indictment on grounds that the statement alleged in Count Ten is not false as a matter of law. Count Ten charges these defendants with falsely answering

"no" to the question "Does your organization have interlocking directors with foreign interests?" in a document submitted to the Department of Defense in connection with their application for a security clearance. Relying on *United States v. Race*, 632 F.2d 1114 (4th Cir.1980), defendants argue that the statement alleged as false was authorized by a reasonable interpretation of the question posed.

In *Race*, the court held that a prosecution for making false statements cannot be founded on an ambiguous contract. *Race* involved a contract between Consolidated Services, Inc. ("CSI") and the Navy to secure the delivery of labor and services. CSI was charged with submitting false and fraudulent invoices under the contract in violation of 18 U.S.C. §§ 2, 371, 1001. The court initially noted that the government is required to prove the falsity of the statement in any prosecution under § 1001. *Id.* at 1119. Although the court found that the contract clearly authorized CSI's submissions, it further held that even if the contract was ambiguous, that is "susceptible of at least two reasonable constructions," the defendants could not as a matter of law, be found guilty of making a false statement. *Id.* at 1120. "This is because one cannot be found guilty of a false statement under a contract beyond a reasonable doubt when his statement is within a reasonable construction of the contract." *Id.* Additionally, the court stated that CSI's good faith was irrelevant in determining falsity. Since "the Government must prove both the falsity of the statement and ... that the utterer knew the statement was false. ... [,] [i]t thus makes no difference what the defendants thought if CSI's billings were authorized under a reasonable interpretation of the contract ...." *Id.*

Defendants argue that the question "Does your organization have interlocking directors with foreign interests?" could be reasonably interpreted as excluding foreign corporations wholly owned by American citizens. Defendants premise this interpretation on the fact that the purpose of the security clearance is to prevent the leaking of classified information to foreign powers. Moreover, defendants insist that in this context a question regarding "foreign interests" suggests foreign citizens and foreign powers rather than Hong Kong corporations owned entirely by American citizens. Thus, defendants argue that the phrase in the question is so ambiguous on its face, that as a matter of law, their answer to it could not have been false.

In opposition, the government argues that defendants' claim is a factual defense to the charge which must be decided by the jury, not by the court at the motions level. In the government's view, the defendants claim that they did not knowingly make a false statement since they did not understand or were confused by the question. This characterization misconstrues defendants' argument. By this motion, the Court will not be required to rule on the defendants' subjective intent. Rather, the issue is whether the phrase is so ambiguous that, as a matter of law, defendants' answer to the question could not have been false.

While the Court feels that the *Race* decision may be applicable to Count Ten of the Indictment, the Court feels that it would not be possible to make a determination on this issue at this stage of the proceedings. The Court will follow the approach taken by other Courts which have held that a *Race* motion should be made at the close of the government's evidence. *See, e.g., United States v. General Dynamics Corp.*, 644 F.Supp. 1497 (C.D.Cal.1986), *rev'd on other grounds*, 828 F.2d 1356 (9th Cir.1987); *United States v. Computer Sciences Corp.*, 511 F.Supp. 1125, 1136 (E.D.Va. 1981), *rev'd on other grounds*, 689 F.2d 1181 (4th Cir.1982), *cert. denied*, 459 U.S. 1105, 103 S.Ct. 729, 74 L.Ed.2d 953 (1983). At that time defendants may bring the motion under Fed.R.Crim.P. 29. *Id.* Accordingly, defendants' motion to dismiss Count Ten on grounds that the statement alleged in Count Ten is not false as a matter of law is denied without prejudice.

**628**

### d. *Exculpatory No Doctrine*

 Defendants argue that the false statement and concealed facts alleged in the Indictment fall within the "exculpatory no" exception to § 1001.[9] One of the five requirements that defendants must establish to satisfy the doctrine is that the false statement must not impair the basic functions entrusted by law to the federal agency.[10] Defendants argue that the statements and omissions alleged in the Indictment could not have perverted the normal functioning of the government because they were immaterial to the issue under consideration by the agency; i.e., whether to grant the defendants a security clearance. In Section V(a) of this Memorandum Order, the Court determined that the false statements which are alleged in Counts Six through ten were material to the Department of Defense's inquiry. In light of this decision, defendants have failed to establish that the false statements did not impair the basic functions entrusted to the agency, one of the criteria required under the "exculpatory no" doctrine. Accordingly, defendants' motion to dismiss must be denied on grounds that the "exculpatory no" doctrine is not applicable here.

An appropriate Order was entered prior to trial.

---

**9.** The "exculpatory no" has not been explicitly adopted or rejected by this Circuit. *See United States v. North,* 708 F.Supp. 364, 369 (D.D.C. 1988).

**10.** The other four requirements of the doctrine are: (1) the false statement must be unrelated to a claim to a privilege or a claim against the government; (2) the declarant must be responding to inquiries initiated by a federal agency or department; (3) the government's inquiries must not constitute a routine exercise of administrative responsibility; and (4) a truthful answer would have incriminated the declarant. *United States v. Alzate-Restreppo,* 890 F.2d 1061, 1066 (9th Cir.1989) (citations omitted).